Chicago and Alton Railroad Company

*v.*

David Wilson.

1. Negligence—*care and precaution required of railroads.* Railroad corporations are required to use all reasonable precaution for the safety of the traveling public, whether in the construction and operation of their engines and coaches, or the erection of their depots, or the construction of their tracks, or the approaches to their trains. It is their duty to furnish safe and convenient approaches to their passenger coaches. In operating such immense forces it is their duty to use them with care and due regard to the safety of others. For any neglect in furnishing any of the appliances to their trains, or when furnished, if insecure or unsafe, when it could have been avoided by reasonable effort and precaution, and injury results, the company will be held liable for damages resulting therefrom.

2. Same—*in constructing platform.* In this case the railroad company, at a point where its passenger trains passed each other at the time of the accident, constructed a platform for the convenience of passengers getting on and off their trains, between the main and a switch track, about 100 feet long and 5¼ feet in width, so that when the trains stood side by side of each other there was between the coaches about 2 feet 3 inches clear space in the middle of the platform, which was the only means provided for approaching and leaving the trains. The plaintiff, after purchasing a ticket for the train going south, with a friend passed over the main track to the platform for the purpose of getting upon the train then approaching on the side track, and whilst either standing or walking slowly on the platform waiting for the passengers to alight, was struck by the train coming from the south on the main track, and injured. When struck his back was towards the approaching train : *Held,* that the construction and use of so narrow a platform at a point where the trains passed each other, one on each side, was reckless and wanton carelessness and gross negligence; and that knowing, as the engine driver and conductor did, the situation of the platform, it was a wanton disregard of human life to run the train upon the main track while persons were getting upon and from the other train, and that there was the highest degree of negligence amounting to wilful injury.

3. Contributory negligence of plaintiff. The plaintiff in such case, being a stranger not familiar with the locality, and not aware of the fact that the two trains passed each other at the place, could not be said to be wanting in care. Knowing the use of the platform, he went on it

with an implied assurance that it was safe, and that he might use it for approaching and getting upon a train standing there to receive passengers. Although it might have been obvious to him that his situation would have been perilous if the other train should move up, as it did, on the main track, yet he was not bound to suppose that so reckless a thing would be done. He had a right to believe that the employees of the company would act with common prudence.

4. NEGLIGENCE—*evidence.* When the evidence showed negligence gross and reckless on the part of a railroad company, resulting in serious injury to the plaintiff, proof that plaintiff, while under the influence of great pain, and his mind confused, if not unsettled, by the injury, that no one was to blame, will not excuse the company. Even if the declaration was made deliberately, and the whole evidence shows that the plaintiff was mistaken, it will not relieve the company from liability.

5. NEGLIGENCE—*excessive damages.* In case of personal injury caused by gross and reckless negligence on the part of a railroad company, in its nature culpable, and such as to authorize punitive damages, when the plaintiff, in consequence of the injury, lost his hand, and was thereby rendered incapable of performing on a musical instrument necessary in his profession as a teacher of music, and compelled to employ an assistant at a large expense, to pursue his business, and submit to greatly reduced income, and incurred about $1000 in board, physicians' bills and attendants, and was unable to attend to business for about six months, a verdict of $8000 was considered not excessive.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

This was an action on the case by David Wilson, against appellant, for a personal injury from a train of appellant's cars, whereby he lost his right hand. The declaration charged that the accident was caused by the negligent and insufficient manner in which the platform was built. Trial and verdict for $14,000. Motion for new trial, which was granted. At the second trial the verdict was for $8000. Motion for new trial, which was overruled.

Messrs. WILLIAMS & BURR, for the appellant.

Mr. GEO. H. ESTABROOK, and Messrs. WELDON & BENJAMIN, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

This was an action on the case brought by appellee, in the McLean circuit court, against appellant, to recover for injuries inflicted on the person of appellee.  On the 29th of October, 1869, appellee was, whilst standing on a platform at the station at Lexington, struck by a train of cars.  The platform had been constructed by appellant for the convenience of passengers in approaching and leaving the trains on appellant's road, and was situated between the main track and a switch track.  The platform was also used by the road in taking care of baggage, mail and express matter received and discharged at that station.  At the time the accident occurred the passsenger trains passed each other at that station, and such had been the case for some weeks previously.  The platform was about 100 feet in length and 5 feet 4 inches in width.  The time for the arrival of the trains was the same. In passing where the train coming from the north reached the south end of the switch, it was opened and the train ran in and stopped opposite the depot ; and after receiving passengers, baggage and mails, it passed out of the switch and went south.

Appellee, after purchasing a ticket for the train going south, with a friend passed over the main track to the platform for the purpose of passing to the train which was approaching, and whilst either standing or walking slowly on the platform, was struck and injured by the train coming from the south. When the trains stood side by side of each other, there was between the coaches about 2 feet 4 inches of clear space in the middle of the platform, the projection of the coaches covering about 18 inches on each side.  Appellee was not familiar with the locality, this being the first time he was ever there, nor was he aware that the trains passed each other at that place.  When struck, appellee was waiting for the passengers to alight from the train upon which he expected to take passage, and his back was towards the approaching train.

The company had provided no other means of leaving and approaching their passenger trains on the side track than by this platform, and persons desiring to go south had no other access from the depot building except by approaching it over this narrow platform. It does not seem that there was in practice any regularity in the mode of passing; sometimes one would pass out first, at other times the other, and on other occasions both would pass out at the same time.

After receiving the injury appellee was taken to a hotel close by, and his right hand being badly mangled it was amputated. For some days his life was believed to be in danger. He was unable to attend to his business for about six months after receiving the injury, and expended, as the evidence shows, about $1000 in paying physicians' bills, medicines, board and nurses. His occupation is that of a teacher of music, and the proof tends to show that he earned about $200 per month, and that he is less successful since his injury; and he is under the necessity of hiring an assistant. These are the material facts developed on the trial. The case was twice tried by the court and a jury, the first trial resulting in a verdict of $14,000; the latter in $8000, upon which judgment was rendered.

Railroad companies are required to use all reasonable precautions for the safety of the traveling public, whether in the construction and operation of their engines and coaches, or the erection of their depots, the construction of their tracks or the approaches to their trains. In operating such immense forces, it is their duty to use them with care and with regard to the safety and rights of other persons. And neglect in furnishing any of the appliances to their roads, or, when furnished, if insecure and unsafe, when it could have been avoided by reasonable effort and precaution, if injury results the company will be held liable for damages resulting therefrom. It is the duty of such companies to furnish safe and convenient approaches to their passenger coaches. They have no right to invite the traveling public to occupy positions of

peril.   In this case we see that this platform was constructed
by the company to enable passengers to get upon and pass
from their coaches.  All persons seeing it would understand
that this was its principal use, and would use it for the pur-
pose without being informed that such was its purpose.

Then, was reasonable care observed in the construction of
this platform?   We think not; but, on the contrary, that
those planning and executing the work were guilty of reckless
and wanton carelessness.   To erect such a structure, having
but little more than the width of a man clear between the
passing cars, is almost what was by a witness denominated
"a first-class man trap."   The most ordinary intellect would
only have to see it to understand that it would be highly
perilous to the safety of passengers going on and from
the cars.   When built it was, from its very character, danger-
ous when used as a point for trains to pass each other.   The
fact that when so used it was highly dangerous would seem to
be a self-evident proposition.   It was so manifest, that per-
sons not connected with the road had previously called the
attention of the employees of the company to the danger, but
it had not been heeded.   It, when all the facts are considered,
appears to have been reckless to create so dangerous a plat-
form, and gross negligence to use it as the company did.

Again, knowing, as the engine driver and conductor did,
the situation of this platform, it was a wanton disregard of
human life to run the train on the main track opposite that
on the side track, whilst persons were getting upon and from
the other train, and were necessarily using the platform.   No
one could have ever reasonably hoped that it could be done
without inflicting injury upon some one.   The last train
should have waited until all persons had passed from the
standing train, and all persons going as passengers upon it
had got aboard, and the platform was clear, before drawing
up to the depot.   In doing otherwise there was the largest
degree of negligence amounting to wilful injury upon appel-
lee.   The injury was almost the inevitable result of such

management of the trains. And when the company subsequently changed the track, they only did what a reasonable regard for the safety of others required them to have done before the accident occurred ; or they should have at first so constructed it.

Nor can it be said that appellee was wanting in care on his part. He came to the depot a stranger; he found the platform ; knowing its use he went on it with an implied assurance that it was safe and that he might use it for approaching and getting upon the train standing there to receive passengers. What reason had he to suppose that to save himself he would have to occupy the precise center of the platform, or lean against the cars on the side track ? He was not informed by the employees of the company, or any one else, that the other train would come up before the one on the side track would leave ; he had no reason to suppose that so dangerous an act would be done by the company. It may have been obvious to him that his situation would be perilous if the other train should run up, as it did, on the main track, but why should he even imagine that so reckless a thing would be done ? He had a right to believe that the employees of the company would act with common prudence. This the law, as well as common feelings of humanity, required at their hands.

Nor do we see that, even if he did say that he " did not know that any one was to blame," the company was excused by that declaration.

When he used the language, if he did, he was under the influence of pain, perhaps of narcotics, and his mind confused if not unsettled by the effects of the injury. But even if he made the declaration deliberately, the fault of the company is so apparent that such a declaration could not create the slightest doubt that he was wholly mistaken. We can see no negligence on the part of appellee, and negligence gross and reckless on the part of appellant, and it is certainly liable for the results of that want of care.

We now come to consider the question whether the damages are so far excessive as to require a reversal. Whilst they are high, were it not for the fact that there was such gross negligence on the part of the employees of the company, this verdict would probably have been excessive. When the company neglected to make the change of their track when their attention was called to the danger it involved, it indicated such recklessness as authorized punitive damages. When appellee had lost his hand, had been rendered thereby incapable of performing on a musical instrument necessary to his musical performances, and being compelled to employ an assistant, at a large expense, to pursue his business, and having to submit to greatly reduced income, and having been compelled to lose a large sum whilst being cured, and being at large expense in board and physicians' bills, he was entitled to a large portion of this sum as mere compensation, and the amount allowed as punitive damages is not excessive.

Perceiving no error in this record, the judgment is affirmed.

*Judgment affirmed.*