THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

FERDINAND WINTERS.

*Opinion filed October 24, 1898.*

1. APPEALS AND ERRORS—*rate of speed at which train was running is a question of fact.* In an action against a railroad company involving the alleged violation of a city ordinance regulating the movement of trains, the question as to the rate of speed at which the train which caused the injury was running is one of fact, which the Supreme Court cannot consider.

2. INSTRUCTIONS—*when instruction does not single out particular witnesses.* In an action against a railroad company for injuries received

by a stockman while in company with several other stockmen, who testified in the suit, an instruction that the jury, in determining the credibility of a witness, might consider "his relationship to the parties," cannot be construed as meaning the relationship of employer and employee, and singling out the company's witnesses.

3. CARRIERS—*a stockman traveling on a freight train with stock is a passenger.* A stockman traveling on a freight train with the consent of the railroad company, in charge of stock, is a passenger.

4. SAME—*one leaving train to change cars does not cease to be a passenger.* A stockman rightfully upon a freight train, in charge of stock, does not cease to be a passenger while making a necessary change, at the end of a division, from the caboose in which he was riding to that of the outgoing train which is to take his stock.

5. SAME—*effect where passenger is injured after alighting by invitation.* A passenger who leaves a train at the conductor's invitation, or suggestion that it is the best place to alight, is not chargeable with contributory negligence for injuries received while following the conductor's instructions.

6. SPECIAL FINDINGS—*special interrogatories should not call for evidentiary facts.* Special interrogatories calling for mere evidentiary and not ultimate facts may be refused.

*Chicago and Alton Railroad Co.* v. *Winters,* 65 Ill. App. 435, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macoupin county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

This is an action on the case, brought by the appellee against the appellant company to recover damages for a personal injury. The declaration consisted originally of six counts, but the first, second, fourth and fifth counts were stricken out or withdrawn, and the third and sixth counts only were left standing. The defendant pleaded the general issue. The case was tried before the court and a jury, and resulted in verdict and judgment in behalf of the appellee, the plaintiff below. This judgment has been affirmed by the Appellate Court; and the present appeal is from such judgment of affirmance.

The third count of the declaration alleges, that the appellee was lawfully and by invitation of the appel-

lant, the defendant below, on the grounds of appellant within the corporate limits of the city of Bloomington at a point between Mason and Washington streets; that an ordinance of said city prohibited the appellant from running its passenger trains at a greater rate of speed than ten miles per hour, and its freight trains at a greater rate of speed than six miles per hour, in said city between said streets; that appellant's servants ran a certain passenger train on said railroad between said streets in said city on the night of December 12, 1893, at a greater rate of speed than was permitted by the ordinances of the city; and that the appellee, while on the grounds of appellant by its invitation, and while using due care for his own safety, was knocked down and injured, etc.

The sixth count of the declaration alleges, that the appellee was a passenger on appellant's railroad car to be carried from Nilwood to Chicago; that it was the duty of appellant to safely convey and keep appellee from all unnecessary danger, and not to expose him to needless peril while so being a passenger; that, while appellee was so a passenger at Bloomington and on the grounds of appellant's railroad, appellant, by its agents, invited him to alight from said train of cars at a time and place of needless peril, appellant knowing, and appellee at the time not knowing, of the perils of the time and place; that appellee then and there alighted from said train on appellant's ground at the invitation and suggestion of appellant; and that, upon so alighting at such place, and while in the exercise of due care to guard against injury, appellee then and there was thrown and caused to fall down by the motion of a certain rapidly moving train of the appellant, or by the swift currents of air set in motion by said train, and was thereby injured.

The facts developed by the testimony are substantially as follows: On December 12, 1893, appellee, who was a farmer, shipped from Nilwood in Macoupin county a car-load of sheep over appellant's road to Chicago, and

took passage on the same train, riding in the caboose, to accompany his sheep to Chicago. When appellee boarded this train there were in the caboose two other parties accompanying their stock to Chicago, who had boarded the train at points further south than Nilwood. On the way from Nilwood to Bloomington, other cars of live stock were added to the train, and six other shippers of stock likewise took passage in the same caboose. When the train, which was a freight train, arrived at Bloomington, there were nine shippers of stock in the caboose, including the appellee. Appellee had never made but two similar trips to Chicago. The train arrived at Bloomington after night, and stopped at the hour of 9:40 P. M. on the west track of the appellant, about a block and a half south of the switch yard of the appellant at Bloomington. There was another track upon the appellant's right of way, east of the track upon which the freight train stopped; and the space between the two tracks was about eight feet. The evidence shows, that it was the custom of the railroad company, when a freight train, of this character arrived at Bloomington, to make up a new train to go on from Bloomington to Chicago. Upon the new train thus made up another conductor than the one arriving on the train at Bloomington took charge from Bloomington to Chicago, and another caboose than the one arriving at Bloomington, was attached to the train newly made up to go to Chicago. It was thus necessary for the appellee and the other stockmen with him to alight from the train on which they arrived in Bloomington, and go into the other caboose attached to the newly made-up train. It was sometimes difficult for the stockmen to find the caboose attached to the new train, in order to enter it after the train was made up in the switch yard. Some of the witnesses say, that it was oftentimes necessary for them to hunt for the caboose attached to the new train, in order to find it.

When the freight train thus reached a point on the west track at 9:40 o'clock at night, a block and a half south from the switch yards, the conductor and brakeman of the freight train were in the caboose with the stockmen, and asked them if any of them desired to get lunch. Several responded in the affirmative. The conductor then told them to get off at that point and walk north a block and a half to where the lunch counter was. He stated to them, that the freight train would probably remain at that point for some time, and that, if they waited until the train reached the switch yards, it might move on before they would have time to get lunch. The freight train stopped on the west track, at the point indicated, to await a signal to pull up into the switch yard. The stockmen, including the appellee, then alighted from the caboose of the freight train in which they had been riding, and walked north on the east side of the freight train toward the switch yard. Just after they so began to walk northwards, the freight train began to move north, going at first slowly and then more rapidly. While the appellee and the other stockmen were thus walking north, a fast passenger train coming from the north and going south, passed down on the east track, so that the stockmen were thus caught between the two trains. The passenger train, which thus passed to the south on the east track, was due at Bloomington about 9:45 P. M., and seems to have been about on time on this evening. The testimony shows that the space between the two moving trains, the freight train moving north and the passenger train moving south, was only about four feet. The night was cold and the ground was frozen. Appellee was walking in the rear of the other stockmen, and in some way, by the motion of the trains, or by the current of air created by their motion, he was knocked down, and one of his legs was so crushed by the passenger train that it had to be amputated.

Rinaker & Rinaker, for appellant.

Anderson & Bell, for appellee.

Mr. Justice Magruder delivered the opinion of the court:

Counsel on both sides have filed in this court the briefs prepared by them for the Appellate Court. The briefs are largely taken up with discussions of facts. Two prominent questions of fact are discussed by counsel for appellant in their brief. One of these questions of fact is, whether or not the passenger train, which came down the east track, was running at a rate of speed prohibited by the ordinances of the city of Bloomington. The other question of fact is, whether or not the appellee was requested or invited by the conductor or brakeman, or both of them, to alight from the freight train and walk along upon the right of way of the appellant towards the switch yard, in the manner set forth in the statement preceding this opinion.

*First*—Section 87 of chapter 114 of the Revised Statutes provides, that, "whenever any railroad corporation shall by itself or agents, run any train, locomotive engine, or car, at a greater rate of speed in or through the incorporated limits of any city, town or village, than is permitted by any ordinance of such city, town or village, such corporation shall be liable to the person aggrieved for all damages done to the person or property by such train, locomotive engine or car; and the same shall be presumed to have been done by the negligence of said corporation, or their agents." (2 Starr & Curt. Ann. Stat. p. 1941). The evidence was conflicting as to the rate of speed at which the passenger train was running, the witnesses of the appellant placing it at ten miles an hour, and the witnesses for the appellee placing it all the way from fifteen to twenty-five and thirty miles per hour. It was for the jury to determine whether the testimony of

the appellee's witnesses, or that of the appellant's witnesses, was to be believed. The lower courts have found against the appellant upon this question as to the rate of speed, and we are concluded by their judgments. The jury found that the passenger train was traveling faster than it was authorized to do under the ordinances of the city, and, this being so, the defendant was *prima facie* guilty of negligence.

Counsel for appellant claim, that the witnesses for the railroad company, upon the question of the speed of the train, were expert witnesses, and better capable of judging as to such rate of speed, than the witnesses introduced by the appellee; and it is said that the appellant would not have been found guilty under the third count of the declaration, if the jury had not been misled by the first instruction given for the appellee. The first instruction thus complained of told the jury that they were the judges of the degree of credit which should be given to the testimony of the several witnesses in this case; that the jury, in determining how far each witness was entitled to credit, may take into consideration the apparent intelligence of such witness, his means of knowledge, his manner of testifying, as shown by the evidence; his relationship to the parties in this suit, if any be shown; any feeling of interest or partiality, which may be shown by the evidence, for or against either of the parties; the extent to which such witness may be corroborated or disputed by other credible evidence in the case, and all the facts and circumstances in evidence; and that the jury should give to the testimony of each witness such weight as in their opinion it was entitled to receive.

The first instruction, as to the various tests laid down by it, is fully sustained by the authorities, as may be seen by reference to Sackett on Instructions to Juries, (2d ed. pp. 31, 32,) and the cases there cited. Counsel for appellant say, that the instruction is misleading, and that it singles out the witnesses for the appellant and

covertly makes an attack upon them. We do not think that the instruction is justly liable to such a charge. It refers no more to the witnesses of the appellant than to those of the appellee. It is said, that, by mentioning the relationship of the witnesses to the parties, reference is made to the relation of employer and employe, which existed between the appellant and its witnesses. The instruction no more contemplates such relationship than the relationship, which may have existed between appellee and the other stockmen upon the caboose, as being all passengers upon the train, and all engaged in the business of looking after their stock and accompanying it to the place of shipment. As the instruction authorized the jury to take into consideration the means of knowledge possessed by the witnesses, they were authorized thereby to give to the testimony of appellant's witnesses, upon the subject of the speed of the train, such weight as it deserved, if such witnesses, by reason of being experts in such matters, had means of knowledge superior to the means possessed by the appellee's witnesses. In most of the cases referred to by counsel as sustaining their objection, that the first instruction singles out the witnesses for the appellant, the names of particular witnesses were mentioned, and the instructions were condemned on that account. (*Clevenger* v. *Curry*, 81 Ill. 432; *Phenix Ins. Co.* v. *LaPointe*, 118 id. 384; *Pennsylvania Co.* v. *Versten*, 140 id. 637). The instruction here complained of contains no such defect as that condemned in these cases.

*Second*—It is contended by appellant's counsel, that the appellee had no right to recover under the sixth count of the declaration. The main question discussed, in relation to the evidence and instructions applicable to the sixth count, is the question whether or not the appellee was invited to alight from the caboose and walk along upon the grounds of the appellant. The conductor, it is true, swears that he told the appellee, and the other

stockmen, who were in the caboose, that they had better remain in the caboose until the freight train arrived at the switch yards, but the appellee and seven or eight other stockmen, who were in the caboose with him and who heard what the conductor and brakeman said, all swear in substance, that they were told by the conductor to get out, and walk up a block and a half to the place where the lunch counter was. When the freight train stopped at 9:40 o'clock in the evening, neither appellee, nor any other of the stockmen, asked any question of, or any information from, the conductor in regard to lunch, or in regard to the length of time the train would stop, or in regard to any other matter. The conductor himself first introduced the subject of lunch by asking the appellee and the other stockmen, who had been on the freight train, most of them, since one o'clock, whether they desired to get lunch. The conductor says himself, that it was a part of his business to ask them whether they wanted lunch; and that he had received from his superior officers directions to do this. There was a bulletin, directing him to inquire of shippers on the train for such of them as wanted to get lunch. When some of them stated that they desired to get lunch, he told them that they had better get off at that point and walk northwards. The conductor and the brakeman were in the caboose with the appellee and the other stockmen and saw them alight. They say the appellee and the others got off and started to walk on the east side of the freight train. The conductor knew that the fast passenger train from the north was due at Bloomington at 9:45 o'clock P. M. The appellee was not aware that such a passenger train was coming at that time. The conductor did not warn the appellee, that it was dangerous to walk up on the east side of the freight train, nor did he warn him, that, at that time, a passenger train would approach or was due on the east track. He did not state to the appellee, that it would have been safer to have walked up

on the west side of the freight train. There is evidence tending to show, that there was no graded street upon the west side of the west track, upon which the freight train stood, and that on the way to the switch yard there was an embankment and a cut, which it would be difficult to pass for one walking on the west side, especially on a dark winter night.

Counsel are mistaken in saying, that the relation of carrier and passenger did not exist between appellant and the appellee, when the appellee alighted from the freight train. He was obliged to alight from the caboose in which he was, in order to get into another caboose, which was to be attached to a new train, to be made up a block and a half north of the point where the freight train had stopped. Independently of any question of obtaining lunch, it was necessary to alight from the one caboose in order to take the other caboose.

We have held that a person, who is traveling with the consent of the railroad company upon a freight train in charge of stock or goods carried by the company for him, is a passenger. (*New York, Chicago and St. Louis Railroad Co.* v. *Blumenthal,* 160 Ill. 40; *Chicago City Railway Co.* v. *Rood,* 163 id. 477). This relation between the passenger and the railroad company does not cease upon the arrival of a train at the place of the passenger's destination, but the company is still bound to furnish him an opportunity to safely alight from the train. He continues to be a passenger while he is rightfully leaving the train. If the train has reached a point where the passenger may lawfully leave it, and no direction is given him to alight on the side of the train where there is no danger, but he is permitted to alight upon the side where there is danger, it is a question for the jury whether reasonable care for the safety of the passenger has been used by the railroad company. (*Pennsylvania Co.* v. *McCaffrey,* 173 Ill. 169). Moreover, "the direction, invitation, or assurance of safety given by a servant of the company, may so qualify a

plaintiff's act as to relieve it of the quality of negligence which it would otherwise have. * * * One, who obeys the instructions or directions of another upon whose assurance he has a right to rely, cannot be charged with contributory negligence at the instance of such other, in an action for injuries received in attempting to follow out the instructions." (*Lake Shore and Michigan Southern Railroad Co.* v. *Brown,* 123 Ill. 162; *Chicago and Alton Railroad Co.* v. *Rayburn,* 52 Ill. App. 277; *Chicago and Alton Railroad Co.* v. *Wilson,* 63.Ill. 167; *Chicago and Alton Railroad Co.* v. *Arnol,* 144 id. 261; *Peoria and Rock Island Railroad Co.* v. *Lane,* 83.id. 448; *Buckley* v. *Old Colony Railroad Co.* 161 Mass. 26). We are unable to say that the jury erred, in finding that the appellant was guilty of negligence, in view of what was said to the appellee and the other stockmen by the conductor, and in view of what the appellee and the other stockmen did in consequence of such statement made to them by the conductor. It was said in *Chicago and Alton Railroad Co.* v. *Wilson, supra,* that railroad companies "have no right to invite the traveling public to occupy positions of peril." In all the cases above referred to, where a passenger dismounted from a train at a place of danger, or went from a safe place on a train to enter a part of the train which was dangerous, and was injured in so doing, and where it was held that such passenger was not entitled to a right of recovery of damages for such injury against the railroad company, it appears that such movement of the passenger, in alighting from the train or in changing his position on the train, was not done by any direction or invitation of the conductor of the train or other servant of the company.

Counsel rely upon the case of *Chicago, Burlington and Quincy Railroad Co.* v. *Hazzard,* 26 Ill. 373, as sustaining their contention that there can be no right of recovery in this case. It must be remembered that the *Hazzard case* was decided on appeal directly from the circuit court to this court, and when this court was in the habit of pass-

ing upon questions of fact, and reversing judgments where the verdict of the jury in the court below was against the weight of the evidence. In addition to this, an examination of the *Hazzard case* will show that the facts there are different from the facts of the case at bar. It appeared there that Hazzard alighted from a freight train before it reached the regular stopping place, but he did so of his own motion, and not because of any invitation or suggestion to do so, coming from any servant or employe of the railroad company; on the contrary, he asked the conductor, if he could get off at the point where he contemplated alighting, and the conductor merely answered that business men did get off at that point. In other words, the passenger in the *Hazzard case* asked information of the conductor, and, when he received the information, exercised his own judgment in acting upon it. In the case at bar, however, appellee asked no information from the conductor of the freight train, but the conductor, of his own motion, first suggested to the appellee and the other stockmen, that they had better alight at the point where they did alight. He was not answering a question addressed to him for information, but was himself making a suggestion, and extending an invitation, when no question had been addressed to him upon the subject about which he spoke.

Hence, we are of the opinion, that the trial court committed no error in refusing to give the second of appellant's refused instructions. By the terms of that instruction the jury were told "that information by those in charge of a railroad freight train to a passenger of mature age, and accustomed to railroad travel—that he might, or might more conveniently, for some purpose of his own, alight from a car on which he was then traveling, at a place known by such person to be not the usual place of alighting from such train—does not require such passenger to take the risk of leaving the car, at such place, and is not negligence on the part of the company operating

such train," etc. The instruction is erroneous in assuming, that the statement, made to the appellee and the other stockmen by the conductor, was in the nature of information, instead of leaving it to the jury to determine, whether or not such statement constituted an invitation to the appellee to do what the conductor suggested. Of this instruction the Appellate Court correctly says in its opinion: "The second was faulty in that it was unduly argumentative, in that it assumed to say that certain facts would not in law amount to proof of a negligent invitation to the plaintiff to alight." All that is material in the appellant's second instruction was given by the court in the sixth instruction asked by and given for the appellant. This sixth instruction told the jury "that it is incumbent upon the plaintiff, to sustain the sixth count of his declaration, to prove by a preponderance of the evidence in this case, that the injury, of which he complains in his declaration in this case, was caused by reason of the fact that the defendant, by its servants, failed and neglected to keep the plaintiff free from unnecessary danger, and not to expose him to needless perils; and that the defendant, by its servants, invited him to get off the train, upon which the plaintiff was riding just before he alighted from said train on the grounds of defendant, at a time and place of needless peril; and that the plaintiff, at the time he was injured, was himself then and there in the exercise of due care for his own personal safety; and that he was then and there injured in consequence of and as the necessary result of the negligence of the defendant's servants, and not as the result of the omission of the plaintiff to exercise that care for his personal safety that a reasonable man, under the circumstances that surrounded the plaintiff at the time he was injured, would and should have exercised, to avoid being injured by the train of the defendant."

*Third*—The appellant upon the trial below asked the court to submit to the jury certain special interrogatories.

The court refused to submit to the jury some of these interrogatories, and modified others of them, which, upon being modified, the appellant withdrew. It is urged that this action of the court was erroneous. By these interrogatories the jury were called upon to make special findings as to mere evidentiary facts. For instance, by one of the questions, the jury were asked, whether the plaintiff alighted, at the time he did, for the purpose of having more time to get lunch before his train should be made up; by another, the jury were asked to find, whether or not the plaintiff was struck by any part of the engine of the passenger train; and by another, the jury were asked to find, whether or not the bell of the passenger train was rung continuously between Chestnut and Washington streets in Bloomington. The material questions of fact, authorized to be submitted to the jury under the statute upon that subject, are not such as relate to mere evidentiary facts, but they are restricted to those elementary facts upon which the rights of the parties ultimately depend. As the special findings, here called for, merely related to evidentiary facts, there was no error in refusing to submit them to the jury. (*Chicago and Northwestern Railway Co.* v. *Dunleavy,* 129 Ill. 132).

Some other points of minor importance are made by counsel for appellant, but, after considering them, we do not deem it necessary to discuss them. What has already been said disposes of the principal objections made to the judgments of the lower courts.

Accordingly the judgment of the Appellate Court, affirming the judgment of the circuit court, is affirmed.

*Judgment affirmed.*

Mr. Justice Boggs, having heard this case in the Appellate Court, took no part in its decision here.