## Chicago City Railway Company v. Kate McCaughna.

### Gen. No. 11,422.

1. NEGLIGENCE—*when traction company guilty of, for injury result-ing to passenger while passing from one car to another.* Where a pas-senger by invitation of the conductor seeks to pass from a trailer to a grip-car while the train is in motion, not knowing and not being warned that such train was about to turn a curve, and is injured, the company is liable.

2. VERDICT—*when, excessive.* A verdict for $3,000 is excessive where the injuries consisted of a cut in one eye-lid, bruises upon the person, insomnia, headaches and nervousness, no positive testimony of any per-manent injury being given.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Af-firmed upon remittitur. Opinion filed January 6, 1905.

Statement by the Court. Appellee was a passenger upon a street car of appellant, which ran south on Wabash avenue to 22nd street and then turned east into that street. The train consisted of a grip-car and at least one closed car, and was moved by a cable. Appellee and Mrs. Froe-lich, who was with her, testified that there was no seat in the closed car; that they stood for a time on the rear plat-form of that car; that one of them asked the conductor if there was a seat in the grip-car, and he replied that there was; that appellee then said that when the car stopped they would get off and get on the grip-car, and the con-ductor said that they need not do that; that they could walk right through to the grip-car; that the chains were down; that they then started to go to the grip-car and found the chains down, which, when up, barred the passage from one car to the other; that Mrs. Froelich passed safely from the closed car to the grip-car, but when appellee was passing from the one to the other the car gave a sudden lurch or jerk and she was thereby thrown from the car to the ground and injured. The conductor testified that one of the ladies asked him if there were seats in the grip-car,

and he told 'them that there were, but that neither then said that she or they would get off the closed car and get on the grip-car when it stopped. He was asked on cross-examination: " Did she (appellee) say anything about getting off and getting on the grip-car, so far as you can recollect? A. No, I don't know; I won't say she did not, simply because I do not remember. I won't say. I don't remember whether she said that or not. I have no recollection. I did not tell the ladies that the chain was down leading from the grip-car. I did not say anything about the chain. I don't remember what I did say about stepping through from the trailer car onto the grip-car, if anything."

The evidence shows that when a car turns upon the curve from Wabash avenue into 22nd street it usually and unavoidably lurches and sways in such manner and to such an extent that persons standing on it are liable to be thrown down unless they hold to the straps or something else, and that this was known by both appellee and the conductor. Appellee testified that the night was dark; that she got on the car at 12th street, a mile north of 22nd street, and that when she started to go from the closed car to the grip-car she did not know where on Wabash avenue the train was. The conductor testified that when appellee started to go to the grip-car he knew where the train was; knew that it was approaching 22nd street, and was about to turn on the curve into that street, and that he did not tell her that it was dangerous then to go from one car to another, nor make any attempt to stop her from doing so.

WILLIAM J. HYNES, S. S. PAGE and W. J. FERRY, for appellant; MASON B. STARRING, of counsel.

FRANK SCHOENFELD, for appellee; CLARK & CLARK, of counsel.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

We attach no importance to the testimony that the train was running at an unusual or improper rate of speed.

The jury was warranted in finding from the evidence that with a train passing over the curve in question at the usual and not an improper rate of speed a car was liable to lurch and sway in such manner and to such an extent as to endanger the safety of a person who at the time of such lurching was stepping from one car to another; that this was known both to appellee and to the conductor; that when the train was near to 22nd street and about to turn upon the curve the conductor invited appellee to go from the closed car to the grip-car; that the chains which when in place barred such passage were then down and that the conductor told appellee that the chains were down; that when appellee by invitation of the conductor started to go from the car on which she was to the grip-car she did not know that the train was near 22nd street but the conductor did know that it was near that street and was about to go upon the curve that led into that street and yet did not warn appellee of her danger in going from one car to another or make any effort to prevent her from so doing. We cannot say that from such facts the jury could not properly find that appellant, a carrier of passengers for hire, did not exercise towards appellee, a passenger, that high degree of care for her safety which the law required it to exercise and a failure to exercise which is negligence, nor can we say that the jury from the evidence might not properly find that appellee was not guilty of contributory negligence. N. C. St. R. R. Co. v. Baur, 179 Ill. 126; C. & A. R. R. Co. v. Winters, 175 Ill. 293; L. S. & M. S. R. R. Co. v. Brown, 123 Ill. 162.

In the case last cited the deceased by direction of the engineer of a switch engine stood upon the foot-board of the engine. The speed of the engine was checked so that the coupling pin which held a car to the engine might be pulled. The pin was pulled and the engine was started suddenly forward in order to make a running switch. By the sudden and violent motion of the engine when it was so started forward the deceased was thrown from the foot-board upon the track, and the car ran over him and killed

him.    In that case it was said :    " There may be fault on the part of the carrier in putting the passenger in a place of unnecessary hazard, or in giving him assurance of safety or the like which might render the apparent want of care of passenger the negligence of the carrier;" and later in the opinion it was said :    " Nor is it shown that the deceased knew or was told that a running switch was to be made. It became the duty of the servants of appellant to advise deceased of the facts before attempting the running switch so that he might have taken extra precaution or have gotten off the engine before the switch was attempted."

In this case appellee knew that a turn would be made when the train reached 22nd street.    She did not know when she started to step from one car to the other that the train had reached that street.    The conductor saw her go forward towards the grip-car and knew that the train was near 22nd street and was about to turn upon the curve into that street and we think it was his duty to tell appellee that the train was about to turn into 22nd street so that she might have remained on the closed car until after the turn was made or taken extra precaution to avoid being thrown from the train.

We find no reversible error in the rulings of the trial court as to the admission or exclusion of evidence.

The injuries appellee sustained, so far as the same could be ascertained from examination, consisted of a cut in one eyelid and bruises on different parts of her person.    She testified that since her injury she had suffered from insomnia, headache and nervousness.    It does not appear that her condition is permanent and her attending physician testified in her behalf, that she could not tell whether her condition would be permanent; that it might last some years or she might recover sooner.

Upon a careful review of all the evidence we are led to the conclusion that the damages awarded are excessive to the amount of at least one thousand dollars.    If appellee shall within ten days remit from the judgment one thousand dollars the judgment of the Superior Court will be

affirmed, otherwise it will be reversed and the cause remanded.

*Affirmed on a remittitur, otherwise reversed and remanded.*
Remittitur filed and judgment affirmed January 9, 1905.