LEASUM, Respondent, vs. GREEN BAY & WESTERN RAILROAD, Appellant.

*March 9—March 30, 1909.*

*Railroads: Injury to passenger riding in car with live stock.*

Defendant had contracted to carry plaintiff's live stock and himself in charge thereof on the same train, which had a passenger coach attached. Plaintiff was in the car with the live stock while it was being switched into the train, and was thrown down and injured by its being bumped against the other cars. There was evidence that, after such collision, the conductor asked plaintiff if he was all right and could go ahead with the car, to which plaintiff replied that he thought so, and he was then permitted to ride in the car to its destination; also that a brakeman who had had orders from the agent to switch the car into the train and who superintended that work knew that plaintiff was in the car and asked him if everything was all right as they were about to hitch on. *Held,* that although there was no express contract, no actual necessity, and no custom shown entitling plaintiff to ride in the car with the stock, yet the jury might well infer from the evidence that the contract was in harmony with the conduct of the parties thereunder, and might find that plaintiff was justified in supposing that he was rightly in the car and hence was not guilty of contributory negligence in being there.

APPEAL from a judgment of the circuit court for Trempealeau county: J. J. FRUIT, Circuit Judge. *Affirmed.*

This action was brought to recover damages for injury to person and to property. Only so much of the controversy as relates to injury to the person is involved on this appeal.

The plaintiff loaded a car containing household goods, a cow, and some chickens, at Whitehall, Wisconsin, for shipment to Keokuk, Iowa. The car was loaded about 7 :30 o'clock on the morning of September 2, 1905, and was to be carried by a west-bound accommodation train to which a passenger coach was attached for the carriage of passengers. This train arrived at Whitehall about one hour and thirty minutes after the car was loaded. In the meantime the car had been switched to a convenient position for being attached to the west-bound train by the engine of another freight train. The plaintiff was in the car at the time it was switched and talked with one of the brakemen of the freight train. His evidence fairly shows that at the time the west-bound train arrived which was to carry the car in question the household goods had been arranged in the car. There is no evidence tending to show that any of the employees engaged in the management of the west-bound train knew of the presence of the plaintiff in the car when the same was switched into the train in which it was to be carried. In backing the car into the train the connection between the car and the engine broke, the air brakes refused to work, and the car was run against the other cars of the train that were standing on the track, with considerable force, so that plaintiff claimed he was thrown down and received injuries for which the suit was brought.

The plaintiff paid to the defendant $38 in consideration for transporting the car and himself from Whitehall to Keokuk. The complaint alleged that in consideration of such payment the defendant "agreed to carry the said plaintiff in charge of said live stock on the train where the same was so carried, from Whitehall, Wisconsin, to Keokuk, Iowa." This allegation of the complaint was admitted by the answer. The

trial resulted in a verdict and judgment for the plaintiff, assessing his damages at $500.

Numerous errors are assigned, but counsel for appellant stated on the oral argument that all such errors were waived, except the refusal of the court to grant a nonsuit or to direct a verdict on the ground that the defendant was not liable for the injuries sustained, for the following reasons: (1) That the defendant had no knowledge nor notice that the plaintiff was riding in the car in question; (2) that such car was not one provided for the carriage of persons; and (3) that said plaintiff had no right to occupy the car at the time of the injury.

*John C. Gaveney* and *R. S. Cowie,* for the appellant, cited, among other cases, *Ohio & M. R. Co. v. Hatton,* 60 Ind. 12; *Ill. Cent. R. Co. v. O'Keefe,* 168 Ill. 115, 48 N. E. 294; *Mendenhall v. A., T. & S. F. R. Co.* 66 Kan. 438, 71 Pac. 846; *Walker v. Green,* 60 Kan. 20, 56 Pac. 477; *Chicago & E. R. Co. v. Field,* 7 Ind. App. 172, 34 N. E. 406; *McNamara v. G. N. R. Co.* 61 Minn. 296, 63 N. W. 726; *Texas & P. R. Co. v. Black,* 87 Tex. 160, 27 S. W. 118; 2 Hutchinson, Carriers, sec. 999; *McGraw v. Railway Co.* 135 N. C. 264; *Mo., K. & T. R. Co. v. Williams,* 91 Tex. 255; *Atchison, T. & S. F. R. Co. v. Lindley,* 42 Kan. 714, 22 Pac. 703.

For the respondent there was a brief by *Anderson & Ekern,* and oral argument by *H. L. Ekern.*

BARNES, J.    It is a general rule that a person desiring to become a passenger on a railway train must enter one of the coaches or cars set apart for passengers, and, if without the knowledge of the agents of the railway company he seeks to ride on some other portion of the train and is injured, he cannot recover damages on account of the mere negligence of the carrier.    4 Elliott, Railroads (2d ed.) § 1578, and cases cited; 2 Hutchinson, Carriers, § 999, and cases cited; *Jenkins v. C., M. & St. P. R. Co.* 41 Wis. 112.

Where the agent of a railway company makes a contract

with the shipper of live stock by which such shipper is permitted to ride in the same car with the stock, such contract. is binding upon the company if the agent was acting within the scope of his apparent authority in making it, particularly where it is shown that it was usual and customary for shippers of live stock to ride in the car with the animals. Such shipper is not guilty of contributory negligence in riding in such car if it appears that it was reasonably common and consistent with his employment for him to do so. *Lawson v. C., St. P., M. & O. R. Co.* 64 Wis. 447, 24 N. W. 618; *Chicago & A. R. Co. v. Winters,* 175 Ill. 293, 51 N. E. 901; *Orcutt v. N. P. R. Co.* 45 Minn. 368, 47 N. W. 1068.

Where a party who accompanies live stock to care for the same rides most of the time in the caboose, but finds it necessary to ride in the car with the stock a portion of the time in order to care for them, and he is injured while so doing, he is not guilty of contributory negligence, and the liability of the carrier for injuries suffered by him is no different from what it would be if he had been injured while riding in the portion of the train provided for the carriage of passengers. *Waterman v. C. & A. R. Co.* 82 Wis. 613, 634, 52 N. W. 247, 1136.

A contract limiting the liability of the carrier to $500 for injuries sustained by a party accompanying live stock is void as against public policy, inasmuch as such party is a passenger for hire. *Feldschneider v. C., M. & St. P. R. Co.* 122 Wis. 423, 432, 99 N. W. 1034; *Davis v. C., M. & St. P. R. Co.* 93 Wis. 470, 67 N. W. 16, 1132.

No express contract entitling the plaintiff to ride in the same car with his cow and chickens is shown. It is made a verity by the pleadings that he had paid for his passage on the train, but this does not establish a contract for carriage in a freight car. We hardly think that there is any affirmative evidence showing any actual necessity for the plaintiff to be in the car at the time of the accident. No evidence was offered showing any custom on the part of shippers to ride in

the car containing their live stock. The case is almost barren of proof showing a contract, a custom, or a necessity which entitled plaintiff to ride in this particular car, and were it not for one or two items of testimony to which we will now allude this judgment could not be sustained.

The evidence of the plaintiff shows that, after the collision occurred, the conductor of the train asked plaintiff if he was all right and could go ahead with the car, to which plaintiff replied that he thought so; that he was permitted to ride in the freight car, without objection or without protest, from Whitehall to East Winona on the defendant's road, and from thence to Keokuk on the Chicago, Burlington & Quincy Railroad, and that he occupied the car on his journey from Saturday morning at 9 o'clock until the following Monday morning. The attitude of the conductor of the train which carried the plaintiff from Whitehall was not consistent with any assumption other than the one that plaintiff was in the car as a matter of right. It was the duty of this conductor to examine the transportation of the plaintiff. He knew that he had been at least slightly injured while in the freight car before his train left Whitehall. If that transportation or the custom of the company did not entitle the plaintiff to ride where the conductor found him and afterwards permitted him to ride, it is fair to assume that he would have requested plaintiff to occupy the portion of the train provided for the accommodation of passengers. It is true the conductor testified that he told plaintiff he could not ride in this car, and that he only permitted him to do so because plaintiff informed him that he wanted to remain in the car awhile and fix things up. The plaintiff denies that the conductor made any suggestion that he should not ride in the freight car, and it is undisputed that he did ride in it until it was switched out of the train at East Winona and thereafter until it reached Keokuk. Under this state of the proof the jury might well infer that the contract of carriage was in harmony with the conduct of the parties

thereunder, and that the construction placed thereon by the parties was in accordance with its terms.

The testimony of the plaintiff further shows that he saw and talked with the brakeman of the freight crew while the car was being put in place by the freight engine preparatory to being coupled to the west-bound train, and that the brakeman asked him if everything was all right as they were about to hitch on. This evidence was disputed, and it was for the jury to determine the fact. The brakeman testified that he had orders from the agent to switch the car containing *Mr. Leasum* onto the west-bound train and that he did switch it onto that train. He watched the brakeman of the west-bound train couple the car onto the engine hauling such train. Having been instructed by the agent to switch the car in question onto the west-bound train, and having apparently superintended such work, the inference is well-nigh conclusive that he gave the engineer and brakeman of such train to understand that the car was ready to be moved in the condition it was with the plaintiff therein. No request was made of the plaintiff to vacate the car. It may well be, as contended by appellant, that a brakeman cannot ordinarily waive the rules adopted by his employer regarding the carriage of passengers, and that notice to him of a fact or condition may not always be notice to his principal. But it is apparent that it was his duty in this case to ascertain whether the car in question was in proper condition to be switched, and, if it was, to move it. Otherwise it was apparently his duty to let it remain where it was. Having ascertained that the plaintiff was in the car with his goods and live stock, it was a question for the jury to say whether the conduct of the defendant's employees was such that plaintiff was justified in inferring that he was rightly in the car. We conclude that there was sufficient evidence in the record to sustain the findings of the jury to the effect that the plaintiff was not guilty of contributory negligence.

*By the Court.*—Judgment affirmed