## NORTHERN PAC. R. CO. v. BEATON.

(Circuit Court of Appeals, Ninth Circuit. October 23, 1894.)

### No. 159.

1. Injury to Employe — Riding on Engine — Contributory Negligence — Rules of Company—Instruction.

In an action by an employé of a railroad company for injuries received while riding on an engine by the falling of a rock from the roof of a tunnel, caused by a projection on a car in front of the engine, the exclusion of a book of rules prescribing the persons who should be allowed to ride on the engines is not ground for complaint, where the court instructed that there could be no recovery, whether or not there was any rule prohibiting plaintiff riding on the engine if the engine was obviously and necessarily a dangerous place to ride, and plaintiff voluntarily placed himself there, and was in the discharge of no duty, and if he would not have been injured had he been in the caboose, as the rules could have been material only on the ground that the engine was a dangerous place to ride, and the instruction gave defendant all the benefit he could claim from the rules.

2. SAME—LIABILITY OF MASTER—EMPLOYING INCOMPETENT SERVANT—INSTRUC-
TION.

An instruction that if defendant was careless in employing or retaining an incompetent conductor, and, on account of his incompetency, plaintiff was injured, defendant would be liable, does not authorize a recovery though defendant had no notice of his incompetency.

3. SAME—FELLOW SERVANTS—CONDUCTOR AND BRIDGE BUILDER.

A foreman of a railroad's bridge carpenters, who has, by the order of his immediate superior (the superintendent of the bridge-building department), gone on a train, to be transported to his place of work, is not, while being transported, a fellow servant of the conductor.

Error to the Circuit Court of the United States for the District of Montana.

Action by Archie Beaton against the Northern Pacific Railroad Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

Cullen & Toole, for plaintiff in error.

Henry N. Blake, Henry C. Smith, D. P. Carpenter, and George F. Shelton, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The Northern Pacific Railroad Company brings this writ of error to review the judgment of the circuit court of the district of Montana in an action brought by Beaton, the plaintiff, against the railroad company, for damages for personal injury. The plaintiff was in the employment of the railroad company as foreman of bridge carpenters in the bridge and building department of the company. Under the direction of the supervisor of said department, he got upon a train of the defendant at Garrison, in the state of Montana, for the purpose of being transported to a bridge six miles east of there, where he was to perform work in taking out drift bolts of the bridge. The train was in charge of the conductor, Romick. There was upon the train a derrick car, which had been shipped to the roadmaster, Russell, who had charge of the track department, and was being used by the men in that department in their work. The derrick car, being a part of the train, was in charge of the conductor thereof, and he was responsible for seeing that it was in a position to clear the bridges and tunnels. He took charge of the train on the morning of October 21, 1891. Prior to that time he had been acting as brakeman. He had not been examined as to his competency or qualification to act as conductor. He had no knowledge of the height of the tunnels above the track, or of the height of the cars, or of the height of the derrick above the track. He took charge of the train that morning in response to a dispatch from the chief train dispatcher, and he saw the derrick car in the train. When the train started, Romick went into the caboose; he paid no attention to the derrick. The arm of the derrick car was at that time raised, so that it would not go through the tunnels; but the conductor did not notice that fact, although it was his duty to see that it would clear the bridges and tunnels. The der-

rick car was next to the engine, and the engine, instead of pulling the train, was pushing it. The plaintiff was sitting in the cab of the engine, on the fireman's seat, where, as he testified at the trial, he had the right to be. The arm of the derrick struck the top of the tunnel, crushed the timbers of the roof and loosened a rock, which fell and struck the plaintiff where he was sitting, in the cab, and inflicted the injuries for which he brought his action.

It is first assigned as error that the court excluded from the evidence a certain book of rules, prescribing the persons who should be allowed to ride upon engines of the Northern Pacific Railroad Company. The objection to this evidence was that it was a system of rules governing engineers only, and intended for their guidance, and not for the direction of employés in other branches of the defendant's service. The contents of the book of rules are not set forth in the bill of exceptions, and it is impossible for the court to know that they were material to the issues in the case. If they were material, it must have been upon the ground that the engine was a dangerous place upon which to ride. This question, and that of the plaintiff's contributory negligence, were properly referred to the jury by the court, in the following instruction:

"If the jury believe from the evidence that the engine upon which the plaintiff rode was obviously and necessarily a dangerous place for the plaintiff to ride, and that he voluntarily placed himself in that position, and was in the discharge of no duty, and that if he had been in the caboose provided for him and other persons he would not have been injured, the plaintiff cannot recover, whether there was or was not a rule prohibiting plaintiff from riding thereon."

This instruction gave to the defendant all the benefit it could justly claim from the book of rules, had they been admitted in evidence. The reason why engineers were not permitted to allow others to ride upon engines is not stated, but it may be assumed to be the greater danger incident to riding in that position. That danger, according to the evidence, arose from the liability of the machinery to break, and the steam pipes to burst. It may be admitted that the plaintiff, in choosing to ride upon the engine, assumed all the risks peculiar to that position. The danger from a rock falling from the roof of a tunnel, however, was not one of those risks. That was an accident quite as likely to happen upon any other portion of the train, and there is nothing in the evidence to indicate the contrary. We find no error, therefore, in the exclusion of the book of rules from the evidence, nor in the charge of the court concerning the subject of the plaintiff's contributory negligence in riding upon the engine.

It is next assigned as error that the court instructed the jury as follows:

"You are further instructed that if the defendant was careless either in employing or retaining in its service a reckless, incompetent, or careless conductor on said train, and on account of the recklessness, incompetency, or carelessness of such conductor, in failing to see that the boom of the derrick was properly lowered before he started the train, and that through such negligence on the part of said conductor, Romick, the plaintiff was injured, without fault or negligence on his part, then in such case the Northern Pacific Railroad Company is liable to him for the damage resulting from said injury."

It is urged that this instruction is erroneous because misleading, and because it holds the defendant liable for retaining in its service an incompetent conductor, whether it had notice of his incompetency or not. The charge is not, in our opinion, justly subject to this objection. It holds the defendant liable for retaining an incompetent conductor in its service only when it has been careless in so doing. In order that the defendant should have been found careless in retaining such an incompetent servant, the jury must have found from the evidence a breach of duty upon the part of the company,—a failure to do that which it was legally bound to do. It is necessarily implied in the instruction that the company must have been negligent, and have failed of its duty, either in employing or retaining the conductor. If there were no negligence in the original employment of such officer, negligence in retaining him would not be imputable until after notice of his incompetency should have been brought home to the company, or such facts as would charge the company with knowledge of his unfitness. All of this was clearly implied in the instruction.

The most important assignment of error is that which brings in question the charge of the court to the jury upon the law of fellow service. The court said:

"If you should find from the evidence that the plaintiff belonged to one department of defendant's railroad service, and the said Romick to another department of said service, and at the time of the injury said plaintiff had nothing to do with the running of the work train, and was only being transported thereon to the place where he was to work, then I instruct you that plaintiff and said Romick were not engaged in a common employment, and were not fellow servants."

The correctness of this instruction depends upon whether or not the decision in the case of Railway Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, has been modified or overruled by the more recent decision of Railroad v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914. In the Ross Case the court had under review the charge of the circuit judge to the jury, which was, in terms, that:

"If the company sees fit to place one of its employés under the control and direction of another, the two are not fellow servants engaged in the same common employment."

It was the decision of the court that the charge was not erroneous, as applied to the case of an injury to a locomotive engineer through the personal carelessness of the conductor of the same train. The court said:

"A conductor, having the entire control and management of a railway train, occupies a very different position from the brakemen, the porters, and other subordinates employed. He is in fact, and should be treated as, the personal representative of the corporation, for whose negligence it is responsible to subordinate servants. This view of his relation to the corporation seems to us a reasonable and just one, and it will insure more care in the selection of such agents, and thus give greater security to the servants engaged under him in an employment requiring the utmost vigilance on their part, and prompt and unhesitating obedience to his orders. The rule which applies to such agents of one railway corporation must apply to all, and many corporations operate every day several trains over hundreds of miles, at great distances apart, each being under the control and direction of a conductor specially appointed for its management. We know, from the manner in which rail-

ways are operated, that, subject to the general rules and orders of the directors of the companies, the conductor has entire control and management of the train to which he is assigned. He directs when it shall start, at what speed it shall run, at what stations it shall stop, and for what length of time, and everything essential to its successful movements, and all persons employed on it are subject to his orders. In no proper sense of the terms is he a fellow servant with the fireman, the brakeman, the porters, and the engineer. The latter are fellow servants in the running of the train under his direction. As to them and the train, he stands in the place of, and represents, the corporation."

In the Baugh Case it was held that the fireman and engineer of a locomotive engine running alone upon a railroad, with no train attached, were fellow servants, notwithstanding the fact that by the rule of the company the engineer, in such a case, was to be deemed the conductor. The distinct doctrine of the Baugh Case is that to hold the master liable for an injury sustained by one servant through the negligence of a fellow servant, upon the ground that the latter stands in the attitude of a vice principal, the negligent servant must have been either charged with the performance of a personal duty which the master owed to the injured servant, such as providing him a safe place to work in, safe tools to work with, and safe fellow workmen, or he must have had the control or management of a distinct department of the master's service; and while, in the opinion, the court does not attempt to define what shall constitute a distinct department over which the commanding superintendent is, by virtue of his office, to be deemed a vice principal, the view of the court is illustrated by reference to the law department of a railway corporation and the operating department, between which, in the language of the opinion, "there is a natural and distinct separation,—one which makes the two departments like two independent kinds of business, in which the one employer and master is engaged." And by further reference to the manufacturing or repair department and the operating department, which the court said were two departments, "as distinct and separate as though the work of each was carried on by a separate corporation." But, while the distinction between these departments so referred to is obvious and apparent, we do not understand the court to hold that there might not be other subdivisions or departments in the service of a railway corporation, equally distinct, and which, if placed under the charge and control of a superintending or commanding officer, would sustain such relation to the corporation that the superintending servant would be a vice principal. The Ross Case, while left to stand upon ground apparently inconsistent with the general principles announced in the Baugh Case, is nevertheless, in terms, expressly approved in the opinion of the court in the latter case, and the principles upon which it rested are there carefully distinguished. The court said (page 379, 149 U. S., and page 914, 13 Sup. Ct.):

"The regulations of a company cannot make the conductor a fellow servant with his subordinates, and thus overrule the law announced in the Ross Case."

And on page 382, 149 U. S., and page 914, 13 Sup. Ct., the court said, referring to the Ross Case:

"The conductor was, in the language of the opinion, 'clothed with the control and management of a distinct department'; he was 'a superintending officer,' as described by Mr. Wharton; he had 'the superintendence of a department,' as suggested by the New York court of appeals."

In view of these and other expressions of approval of the Ross Case, it must be held that there are divisions of the service of a railroad company into departments, such that the heads thereof are vice principals of the master, other than those mentioned or used for illustration in the opinion of the court in the Baugh Case, and that a train of cars is such a department, and that a conductor of a train is such a representative of the company, and that for his negligence, whereby a subordinate employé upon the same train is injured, the company will be liable. The instruction of the court upon the question whether or not the conductor was the fellow servant of the plaintiff was in harmony with this interpretation of the law. But it is urged that the plaintiff in this case was not an employé upon the train of which Romick was the conductor, but was the foreman of a gang of bridge builders, in another and distinct department of the defendant's service, and that the facts bring the case within the rule of Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. 322, and Railroad Co. v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983. In the Randall Case, a brakeman working a switch for his own train was held to be the fellow servant of the engineer of another train upon an adjacent track. In the Hambly Case, it was held that the helper to a crew of masons engaged in building a stone culvert for the company upon its right of way was the fellow servant of the conductor and engineer of a passenger train, through whose negligence he was injured. In neither of these cases was the injured servant under the direction or control of the negligent servant. In the Hambly Case, the conductor of the train, while he was the head of a department, and therefore the vice principal of the railroad company, as to all his subordinates upon the same train, was still the fellow servant of another employé of the company, not upon the train, but engaged in work in another department. The case at bar presents a different state of facts. The plaintiff, Beaton, while he belonged to a department of the defendant's service entirely distinct from that of the conductor upon whose train he was injured, was nevertheless, at the time of the accident, lawfully upon that train, and was subject to the personal control of the conductor. For the time being, he belonged to the train, and was in that department. The head of that department (the conductor) owed to him the same duty of care and safe transportation that he owed to the brakeman, the fireman, and the engineer of the train. It is true that in going upon the train, to be transported to his place of work as bridge carpenter, the plaintiff acted under the order of his immediate superior, the superintendent of the bridge-building department; but that superintendent had no control over the movements of the train, or of the conductor thereof. The train was not subject to his orders, but was in the charge of the conductor. The conductor had assumed charge by the direction of the chief train dispatcher. He occupied the same relation to the train and all on board that was sustained by the conductor of the train in the Ross Case. The

reason of the rule of the liability of the master for the servant's negligence, as declared in the Ross Case and interpreted in the Baugh Case, does not consist in the fact that the conductor of the train was the superior officer of the injured servant, but rather in the fact that the latter was in the department of the former; and the conductor was held to be a vice principal, not because he could enforce the obedience of subordinate servants placed under his charge, but because he was clothed with the power to govern the movements of the train which constituted his department. The case of the plaintiff comes within this interpretation of the reason of the rule of those decisions, for he was, at the time of receiving his injury, within the department of the conductor of the train, and subject to his control. The judgment is affirmed, with costs to the defendant in error.