Appellee brought this suit against appellant to recover damages for personal injuries while he was traveling on a freight train with a car of cattle. The allegations of plaintiff's petition are, in effect, that while traveling on a freight train with a car of cattle, and while in the car with the train in motion, attempting to get some of the cattle on their feet, those in charge of said train negligently and carelessly stopped or jerked the same suddenly and unexpectedly, and with unusual violence, and threw the plaintiff down and backward against the end of the car, throwing a calf against him as the result of which he received serious and permanent injuries. Defendant answered by general denial, and specially, "that as the plaintiff was traveling upon free transportation on his undertaking to look after the cattle while in transit, and upon a contract which exempted the defendant from the care of the cattle while in transit, and by the terms of which the plaintiff assumed upon his own initiative to look after the cattle; that, he being an experienced shipper and having often traveled on cars loaded with cattle, he assumed the risk of the danger in entering or remaining in the car loaded with cattle while in motion; that he did not request defendant's employes to hold the train still while he looked after the stock; that the cattle were wild and unruly, which fact was known to plaintiff. The train was handled carefully, Riding on freight trains is necessarily rougher than on passenger trains, and more danger incident thereto, all of which was well known to the plaintiff; if *Page 1061 
he had suffered hernia as result of entering this car, that he could and would with the exercise of ordinary care and the employment of competent surgeons have had the same entirely cured, but that he had negligently failed to have the same treated, and that in this regard he was guilty of negligence." The result of the trial was a verdict and judgment for appellee, from which this appeal is taken.
The appellant was transporting a car of cattle for appellee under a shipping contract, wherein appellee was to be transported with the shipment, and he was to care for and look after the cattle en route, but was to remain in the caboose when the train was moving. When Coleman Junction was reached some of the cattle were down, and appellee went into the car to get them up. The train started before he had gotten all of them up, and he did not succeed in getting them up before reaching Valeria, the next station. He then got out of the cattle car and went back to get a drink of water, when he told the conductor that he was going back in the cattle car, and asked him to tell the engineer to handle his train lighter. He went back into the cattle car, when there were two or three yearlings down, after the train left Valeria, and while it was running and appellee still working to get the cattle all up; the train was running rapidly, and suddenly came to a momentary stop with such violence as to throw appellee against the car and one of the cattle against him with such force as to produce hernia. In describing the stop the witness said: "When the jerk came while I was in the car it was like as if the engineer had put his brakes on; I don't know what he did, but there was a kinder quick, sudden jerk, stop, and the cars bumped and dashed me against the end of the car and the cattle all came that way, towards the front end of the car and towards me. In my experience in riding on freight trains with cattle I never rode on a freight train that stopped as quick as that one did, and with such an unusual jerk. I do not mean that it came to a dead stop; it was running pretty tolerable fast, and it just stopped kinder for a second, kinder crashed on the couplings and popped, and then moved on again. It was a very violent jerk, it had this much force about it. I was stooping over and had the young calf by the head, and the jerk had force enough to dash me against the end of the car and it threw the largest yearling in all the 60, head against the end of the car, and he did not get up again, his shoulder was broken or dislocated. I do not know whether it was broken or dislocated — I am no veterinary surgeon — but he could not walk any more, they had to drag him out of the car at San Angelo, and he had been standing up until the sudden jerk threw him against the end of the car. After that we continued our journey to San Angelo." It was customary for attendants on the trips to remain in the cattle cars when necessary to get the cattle up while the train was moving.
The first error assigned is to the giving of the fifth paragraph of the court's charge, which reads: "Unless you believe from the evidence that the defendant's employé negligently caused the train upon which plaintiff was riding to suddenly and unnecessarily check up or jerk, and thereby caused the injury complained of by plaintiff, you will find for the defendant; and, if you believe from the evidence that plaintiff voluntarily entered said car at Valeria with the intention of remaining therein and working with the cattle while the train was running, that he thereby assumed the risk ordinarily incident to riding in that way, or if you find that such conduct on his part, if any, was negligence which proximately caused or contributed to his injuries, or that plaintiff was injured by being butted in the abdomen by a calf that was down in said car, and which he was trying to get up while the train was running, and not by negligent jerking of the train, if any, you will find for defendant. In this connection I instruct you that if plaintiff did voluntarily go into said car with the intention of riding there and working with his cattle while the train was running, he thereby assumed the risks ordinarily incident to riding in that way, but he did not assume the risk of the negligence, if any, of defendant's employés." It is urged that this charge is on the weight of the evidence, in that there was no evidence that the car in which the plaintiff was riding was unnecessarily checked up or jerked. The evidence of plaintiff as to the jerking, etc., of the train warranted a charge on this issue, and the court did not infringe upon the rule by charging on the weight of the evidence.
Nor do we think the court erred in repeating or placing too great emphasis upon the question of negligence in handling the train. On the proposition that the fifth paragraph of the charge was confusing and misleading in telling the jury in the first part of the charge, in effect, that whether riding in the cattle car was negligence, was a question for their determination, and in the last paragraph submitting it as a question of law.
The charge may be somewhat confusing as to whether the court, in the first part, intended to convey to the jury that it was a question for them to determine, or intended to instruct them that the riding in a cattle car was negligence per se. However, the latter part of said charge does tell them that such conduct is negligence. The charge was intended as the converse of paragraph No. 4, in which the court submitted the theory upon which plaintiff was entitled to recover, and we think the apparent discrepancy worked no harm to appellant.
Appellant's second assignment is that the court erred in the fourth paragraph of its charge, which is as follows: "If you believe *Page 1062 
from the evidence in this case that at the time alleged by the plaintiff he was in the car of cattle at Valeria to care for his stock, and that the train was started while he was in the car, without notice to him, before he finished getting his cattle up, and that he continued to ride in said car and to work with his cattle from Valeria to Talpa; and if you find that it was dangerous to attempt to get out of same while running, and that a person in the use of ordinary care, under the circumstances, would have remained in said car, and that the conductor in charge of said train knew that plaintiff went into and was riding in said car; and if you find that it was customary for persons in charge of stock to ride in the car with them while moving when necessary, to get up and take care of the cattle; and if you further believe from the evidence that plaintiff was acting with ordinary care for his own safety, while in said car, and that while he was working with a calf in said car the agents or servants of the defendant in charge of said train suddenly and unexpectedly to plaintiff checked and jerked said train with unusual and unnecessary violence, and that by said check or jerk of the train (if there was such check or jerk) was negligence, and such negligence (if any) proximately caused plaintiff to be thrown down and backward against the end of the car, and the calf he was handling to be thrown against his abdomen, and he was thereby injured in any of the respects alleged by him — then you will find in favor of the plaintiff, unless you find for the defendant under other instructions herein given you."
One objection is that: "This charge was prejudicial to the defendant and erroneous, in that the jury was precluded from considering the affirmative defenses which were presented in the special charges given at its request, as in this fourth paragraph the jury were directed to find in favor of the plaintiff, etc., unless they found for the defendant under other instructions herein given." We do not see the force of this contention, for the main charge, together with special charges given by the court, is to be considered as a whole, and the jury could not have been prejudiced by the language, "unless they found for the defendant under other instructions herein given." The words, "herein given," included all of the court's charge, whether main or special, for the defense, and precluded none.
The second objection to paragraph 4 of the court's charge above quoted is that: "It was erroneous for the court to submit in this case the issue as to whether or not it was customary for persons in charge of stock to ride in the car with them while moving. The contract under which this shipment moved was offered in evidence, and was unimpeached, and thereunder it was contracted that the plaintiff would remain in the caboose while the train was in motion." In this connection we will also consider the third assignment of error, complaining of the admission of plaintiff's testimony, which was admitted under the following circumstances: "After the plaintiff had testified that he had frequently traveled with freight trains which were transporting his cattle in car load lots, and that cattle on the car would sometimes get down on the floor of the car, and that he would get the cattle up, and had further testified that usually when his cattle got down he, when the train would stop to meet another train, to take water or anything of that sort, would get out of the caboose and go to the car and punch the cattle up, and if he could not get them up that way, he sometimes had to get in the car and straighten them up, plaintiff's counsel asked plaintiff this question: `What do you say was your custom; what you usually did about getting stock up in the car?' To this question the defendant objected because the matter was immaterial and irrelevant, and because any custom of plaintiff was not binding upon the defendant, and because it had not been shown that the defendant had information about what plaintiff usually did, or what his custom was, and because it had not been shown that the defendant had acquiesced in the conduct of the plaintiff, or in what he usually did. The court overruled the objection, and permitted the witness to answer and say, and he did answer and say: `I would get in the car and get them up, and if it happened that they did not wait for me to get out of the car and started off with me, I would stay in the car until we got to the next station, and I got the cattle up, and then I would get out and go back to the caboose.'" The plaintiff had pleaded such a custom with appellant's road. Appellant had pleaded contributory negligence, but had not pleaded plaintiff's contract to remain in the caboose when the train was in motion. The testimony was admissible to be considered by the jury in determining the issue of contributory negligence, and whether or not the provision in the contract had been waived, and the court did not err in presenting it in his charge. Railway Co. v. Cook,12 Tex. Civ. App. 203, 33 S.W. 669, and authorities cited therein.
It was not error to admit in evidence the "American Experience Tables of Mortality," showing the average life expectancy, and for plaintiff to show therefrom his life expectancy. The table was shown to be a standard one, and used generally by reputable life insurance companies for years.
Dr. J. A. Smith, a witness for plaintiff, after testifying to having treated appellee, and as to the nature of his injuries, and after testifying on cross-examination that for several years he had been called as a witness very frequently by plaintiff in suits against railway companies for personal injuries to testify, and that he had never been called as a witness in any case by defendant, he was asked by defendant's counsel "if in these *Page 1063 
cases it had been his custom in the past to proportion his fees for services on the amount of recovery"; objection was interposed by plaintiff and sustained. The defendant here complains at the rule of the court. We think the ruling of the court was proper. What Dr. Smith's custom was in other cases was immaterial. It would have been proper to have inquired what his contract was, or conduct would be, as regarding his fee in this case, but this was not done.
The nineteenth assignment is: "The court erred in refusing to give to the jury defendant's special charge No. 1, which special charge is as follows: The proximate cause of an event is that cause which, operating in a natural and continuous sequence, unbroken by any independent cause, produces the event, and without which the event would not have happened. The uncontroverted evidence shows that the plaintiff was riding on the train upon a contract which obligated him to remain in the caboose while the train was running, and shows that plaintiff at the time he alleges he was injured was riding in a cattle car and not in a caboose, and there is no evidence showing that the defendant had waived the contract requiring plaintiff to ride in the caboose. Therefore you are instructed that, if you believe from the evidence that plaintiff's riding in the cattle car at the time he was injured was the proximate cause of his injuries, if he was injured, then the plaintiff is not entitled to recover in this case, and you will return a verdict for the defendant." This, in effect, would have been telling the jury to find for the defendant, and it was properly refused. Plaintiff had introduced testimony raising the issue as to the waiver of the contract prohibiting plaintiff from riding in a cattle car when moving, and the court had sufficiently submitted that issue.
Appellant's assignments from 20 to 24, inclusive, relate to appellee's entering and remaining in the cattle car while it was moving, etc.; that is, to the issues of contributory negligence and assumed risk. We think what we have said under nineteenth assignment just preceding is a sufficient answer to these assignments.
The twenty-fifth assignment complains of the refusal of a charge which instructs the jury that if they believe the servants were operating the train in such manner and with such movements only as men of ordinary caution and prudence would have used in operating a freight train under the circumstances, to find for defendant. The court in the fourth paragraph of the charge, in effect, required a finding that defendant's servants suddenly and unexpectedly checked and jerked the train with unusual and unnecessary violence, and that same was negligence, proximately causing the injury, and in the fifth paragraph, requiring a finding for defendant, unless the jury believed the employés negligently caused the train suddenly and unnecessarily to check up and jerk and injure plaintiff. The court also defined ordinary care, negligence, and proximate cause, which leads as to the conclusion that appellant's requested charge was sufficiently embraced in the court's main charge, and it did not err in failing to give the requested charge.
The twenty-sixth assignment is as follows: "The court erred in refusing to give to the jury defendant's special charge No. 9, which special charge is as follows: `If you believe from the evidence that the plaintiff, at the time alleged, sustained a hernia, and if you believe that the hernia was caused by any negligence of defendant's servants operating its train, and if you believe that by a surgical operation the plaintiff's hernia would probably have been cured, and if you further believe that a man of ordinary caution and prudence, situated as plaintiff was and has been since he had such hernia, would have had a surgical operation performed for the cure of said hernia, then and in that event the plaintiff is not entitled to recover compensation for any disability or suffering which he probably would have avoided or escaped, if any, by such surgical operation.'" This charge, had it been given, could only have affected the amount of the verdict; and, as there is no complaint of its being excessive, the failure to give said charge will be considered harmless.
There are several assignments complaining of the admission of testimony, the majority of which we think without merit. There are one or two of which, strictly speaking, have merit, and the testimony should not have been admitted, but its admission we regard as of such a nature, under the facts of the case, as not calculated to affect the result of the case, and not such as to require a reversal of the case.
The judgment is affirmed.