JEPSEN, RESPONDENT, *v.* GALLATIN VALLEY RY. CO., APPELLANT.

(No. 4,238.)

(Submitted January 5, 1921. Decided February 10, 1921.)

[195 Pac. 550.]

*Personal Injuries—Railroads—Carrier and Passenger—Livestock Shipments—Limitations in Contract of Shipment—Shipper Riding on Freight Train on Passenger Ticket—Directed Verdicts—Contributory Negligence.*

Directed Verdicts—When Proper.
 1.  A directed verdict on motion of defendant in a personal injury action is proper only where the evidence is undisputed or susceptible of but one conclusion by reasonable men, and that in favor of defendant.

Personal Injuries—Contributory Negligence—Jury Question.
 2.  As a general rule, the question whether plaintiff, in an action of the nature of the above, was guilty of contributory negligence is not one of law, but one of fact to be submitted to the jury.

Carriers—Rights of Passenger on Freight Trains.
 3.  One riding on a freight train by permission of the conductor on a passenger ticket has all the rights of a passenger, and is entitled to such safeguards as might reasonably be expected on a train of that character.

Same—Contributory Negligence.
 4.  Where the ticket agent of a railroad company informed the shipper of a horse that he could not ride on his shipping contract

---

3. Riding on freight train as creating relation of passenger, see note in 61 **Am. St. Rep.** 91.

Liability of railroad company to person wrongfully riding on train by permission or direction of railroad employee, see notes in 9 **Ann. Cas.** 540; Ann. Cas. 1913E, 574.

in the car with the animal, and required him to purchase a passenger ticket, on which he rode in the caboose until the conductor suggested to him that he ride in the box-car, next to the engine, to keep the bedding from catching fire from sparks, he was not, as a matter of law, chargeable with contributory negligence, in his action for injuries sustained in being thrown out by a sudden jerk in starting the train, unless his position was so obviously dangerous that no prudent person would have assumed it, but the question was one for the jury to determine.

Same—Livestock Shipping Contract—Limitations—Rights of Owner Riding on Passenger Ticket.

5. *Held,* that plaintiff having been compelled to purchase a passenger ticket to enable him to ride on the freight train with his horse, he was entitled to the benefit of such contract, and could not be limited to the conditions of the shipping contract as to the amount of damages recoverable, nor as to the time within which his claim for damages for personal injuries was required to be presented under it.

*Appeals from District Court, Gallatin County; Ben. B. Law, Judge.*

ACTION by A. M. Jepsen against the Gallatin Valley Railway Company. From a judgment for plaintiff and an order denying it a new trial, defendant appeals. Affirmed.

*Mr. W. S. Hartman,* for Appellant, submitted a brief, and one in reply to that of respondent; *Mr. H. H. Field,* of Counsel, argued the cause orally.

There was not sufficient evidence of negligence to sustain the verdict. The train on which plaintiff was riding was a light train, moving upon a slight upgrade. There was no occasion in handling it or any unusual or excessive application of force. To the plaintiff, in his crippled condition and exposed situation near the car door, it may have seemed from the after-occurring accident that the jerk which caused his injury was unusual, but taking all of the testimony together, it is apparent that the movement of the train was not unusual in respect of freight trains of a similar character. There can be no dispute as to the law governing such cases. It is well stated in *Missouri, K.*

5. Validity of stipulation in free pass exempting carrier from liability for negligence, see notes in 4 Ann. Cas. 557; 12 Ann. Cas. 584; Ann. Cas. 1915C, 623; 37 L. R. A. (n. s.) 235.

Validity of stipulation in drover's pass exempting carrier from liability for negligence, see notes in 48 Am. Rep. 15; 5 Ann. Cas. 768; Ann. Cas. 1914A, 678; Ann. Cas. 1916A, 448; L. R. A. 1916A, 623.

& T. Ry. Co. v. Lynn, 62 Okl. 17, 161 Pac. 1058, as follows:
"The courts recognize that persons traveling upon freight
trains must bear the inconveniences and risks arising from the
ordinary operation of such trains; that bumping, jolting,
lurching and jerking is necessary and usual in the handling
of freight trains, and it is only where the injury is caused by
an extraordinary or unusual jar, jolt or lurch, due to negli-
gence in the handling of the train, that a carrier is liable."
(*Foley* v. *Boston & M. R.*, 193 Mass. 332, 7 L. R. A. (n. s.)
1076, 79 N. E. 765; *Hawk* v. *Chicago etc. R. Co.*, 130 Mo. App.
658, 108 S. W. 1119; *Hedrick* v. *Missouri Pac. Ry. Co.*, 195 Mo.
104, 6 Ann. Cas. 793, 93 S. W. 268; *St. Louis & S. F. R. Co.* v.
*Gosnell*, 23 Okl. 588, 22 L. R. A. (n. s.) 892; 101 Pac. 1126;
*Wile* v. *Northern Pac. Ry. Co.*, 72 Wash. 82, L. R. A. 1916C,
355, 129 Pac. 889; *Saunders* v. *Chicago & N. W. Ry. Co.*, 6
S. D. 40, 60 N. W. 148; *Norfolk & W. Ry. Co.* v. *Birchett*, 252
Fed. 512, 164 C. C. A. 428.)

The plaintiff can in no event recover more than $500 under
the ninth paragraph of the shipping agreement, and the jury
should have been so instructed; failing that, a new trial should
have been granted or the verdict reduced accordingly. We will
concede that this clause would not be held valid in some states
where the common law prevails, or where public policy, as ex-
pressed in statutes, prohibits such limitation of liability; but
sections 5338 and 5339, Revised Codes, permit a common carrier
to limit its liability, by special contract, except as against gross
negligence, fraud or willful wrong, and by section 5340, a passen-
ger, by signing a "written contract for carriage with a knowledge
of its terms" assents to such modification of the carrier's obliga-
tions as are contained in the written contract if the same are
not prohibited by section 5339. (*Nelson* v. *Great Northern Ry.
Co.*, 28 Mont. 297, 72 Pac. 642; *Wells* v. *Northern Pac. Ry. Co.*,
50 Mont. 122, 145 Pac. 291.)

There is no statute in this state that would prohibit the
limitation of liability for damages for personal injury to a
prescribed amount. (See, also, *Meuer* v. *Chicago, M. & St. P.
Ry. Co.*, 5 S. D. 568, 49 Am. St. Rep. 898, 25 L. R. A. 81, 59

N. W. 945; *Santa Fe etc. R. Co.* v. *Grant Bros. Construction Co.*, 228 U. S. 177, 57 L. Ed. 787, 33 Sup. Ct. Rep. 474 [see, also, Rose's U. S. Notes].)

The complaint makes no mention of the fact that plaintiff was transporting a horse upon the same train, but goes upon the theory that he had all the rights of a passenger and was injured through the negligence of defendant. We are willing to concede that plaintiff had all the rights of a passenger, under his ticket, so long as he remained in the caboose, the place provided by defendant for the transportation of passengers. We also concede that by the current of modern decisions, a caretaker, traveling upon a train for the purpose of taking care of his stock, who, by the shipping agreement is entitled to free transportation for that purpose, is nevertheless, a passenger. (*Norfolk Southern R. R. Co.* v. *Chatman*, 244 U. S. 276, L. R. A. 1917F, 1128, 61 L. Ed. 1131, 37 Sup. Ct. Rep. 499; *Tripp* v. *Michigan Cent. R. Co.*, 238 Fed. 449, L. R. A. 1918A, 758, 151 C. C. A. 385.) In those and like cases the carrier sought to relieve itself of all liability under a provision in the shipping agreement that the company should not be liable for any injury to the caretaker, or that he assumed all risk of injury from the negligence of defendant or otherwise. Those decisions did not deal with a situation where there were statutes permitting a carrier to limit its liability by special agreement, as in Montana. The eleventh paragraph of the shipping agreement provides that the person in charge of the stock "expressly agrees to ride in the caboose car at all times while the train shall be in motion." Such a provision, in the case of a caretaker, riding free, is held to be a reasonable regulation. (*Texas & P. Ry. Co.* v. *Reeder*, 170 U. S. 530, 42 L. Ed. 1134, 18 Sup. Ct. Rep. 705 [see, also, Rose's U. S. Notes]; *Leslie* v. *Atchison, T. & S. F. Ry. Co.*, 82 Kan. 152, 27 L. R. A. (n. s.) 646, 107 Pac. 765.) There is authority for the proposition that the provision requiring a caretaker to ride in the caboose at all times while the train is in motion may be, and is, waived by the consent or direction of the conductor to his riding in the car with the animal, provid-

ing the conductor is authorized to so consent or direct. (*Illinois Cent. R. Co.* v. *Jennings,* 217 Ill. 140, 75 N. E. 457; *Lake Shore etc. Ry. Co.* v. *Teeters,* 166 Ind. 335, 5 L. R. A. (n. s.) 425, 77 N. E. 599; *Leslie* v. *Atchison T. & S'. F. Ry. Co.,* 82 Kan. 152, 27 L. R. A. (n. s.) 646 and note, 107 Pac. 765; *Chicago R. I. & P. Ry. Co.* v. *Lee,* 92 Fed. 318, 34 C. C. A. 365.) No proof was offered of the authority of the conductor to give consent, or to direct such action. (*Illinois Cent. R. Co.* v. *Jennings, supra.*)

The fact that there were two agreements—one evidenced by the ticket, and the other by the shipping contract—does not preclude defendant from relying upon the conditions of that agreement which comprehended the situation of plaintiff at the time and place of his injury. The following cases are directly in point upon this proposition: *Bates* v. *Old Colony R. Co.,* 147 Mass. 255, 17 N. E. 633; *Hosmer* v. *Old Colony R. Co.,* 156 Mass. 506, 31 N. E. 652.

*Mr. C. E. Carlson,* for Respondent, submitted a brief and argued the cause orally.

We have in this case a situation of an extraordinary and unusual jerk in starting the train upon which plaintiff was riding, under circumstances where there should have been no jerk at all. Upon the testimony of the defendant's own witnesses, any jerk of any character, under the circumstances of this case, was unnecessary, careless and poor railroading. That such conduct is negligence is well sustained by all of the authorities. (10 C. J. 975, 976; *Holland* v. *St. Louis etc. R. R. Co.,* 105 Mo. App. 117, 79 S. W. 508; *Szeepanski* v. *Chicago etc. R. Co.,* 147 Wis. 180, 132 N. W. 989; *Indiana etc. R. Co.* v. *Masterson,* 16 Ind. App. 323, 44 N. E. 1004; *Schultz* v. *Minneapolis & St. L. R.,* 123 Minn. 405, 143 N. W. 1131; *Grignon* v. *Minneapolis & St. L. R. Co.,* 130 Minn. 36, 153 N. W. 117.)

The authorities are uniform in favor of the plaintiff on the facts of this case. *Shields* v. *Minneapolis etc. Ry. Co.,* 124 Minn. 330, 50 L. R. A. (n. s.) 51, 144 N. W. 1093 (passenger in baggage compartment; sat in doorway with feet out, with

knowledge of conductor; injured by platform too close to car);
*Lawson* v. *Chicago etc. Ry. Co.,* 64 Wis. 447, 54 Am. Rep. 634,
24 N. W. 618 (plaintiff riding in stock-car, under contract
with station agent); *McGregor* v. *Great Northern Ry. Co.,* 31
N. D. 471, Ann. Cas. 1917E, 141, 154 N. W. 261 (plaintiff was rid-
ing in stock-car, standing up in moving train, injured by jerk);
*Simonds* v. *Minneapolis etc. Ry. Co.,* 87 Minn. 408, 92 N. W. 409
(passenger in act of passing into trainman's compartment in-
jured by door slamming, due to jerk); *Schultz* v. *Minneapolis
etc. Ry. Co.,* 123 Minn. 405, 143 N. W. 1131 (passenger riding
in cupola of caboose, in violation of rule. Habitual violation
held waiver and defendant liable); *Kloppenburg* v. *Minneapolis
etc.,* 123 Minn. 173, 143 N. W. 322 (plaintiff riding in poultry
car. *Held,* not negligent); *Szezepanski* v. *Chicago etc. Ry. Co.,*
147 Wis. 180, 132 N. W. 989 (plaintiff in car with horses; had per-
mission of station agent and conductor to ride in car upon paying
fare); *St. Louis etc. Ry. Co.* v. *Coy,* 113 Ark. 265, 168 S. W.
1106 (plaintiff riding in melon car, with permission of car-
rier); *Indiana etc. R. Co.* v. *Masterson,* 16 Ind. App. 323, 44
N. E. 1004 (plaintiff riding in caboose, went to get drink while
train was moving, injured by jerk).

MR. JUSTICE COOPER delivered the opinion of the court.

This is an action to recover damages for personal injuries
sustained by the plaintiff while traveling as a passenger on a
freight train of the defendant between the stations of Ingomar
and Bozeman, in this state.

On July 27, 1916, at Ingomar, the plaintiff loaded a horse
into a box-car for shipment to Bozeman. The car was placed
in one of the regular freight trains on defendant's main line.
After paying the freight and executing the shipping contract,
the plaintiff inquired of the station agent if he would be al-
lowed to ride in the car with the horse on the contract, in re-
sponse to which the agent stated that he was not entitled to
ride on the contract, but could ride in the freight-car with the
horse if he bought a ticket or paid cash. Without buying a

ticket, the plaintiff boarded the car in which his horse was
being carried. Soon after the train started, the conductor came
into the car, and asked plaintiff for his ticket. The plaintiff
replied that he had not purchased a ticket, handed the con-
ductor a dollar, and received some small silver in change.
Obeying the directions of the conductor, the plaintiff, at Mel-
stone, purchased a through passenger ticket to Bozeman, paying
$7.35 therefor, returned to the car and continued to ride
therein until the train arrived at the station of Three Forks.
There the car was set out, the horse fed, watered, and allowed
to rest. The conductor and other trainmen all the way knew
the plaintiff was riding in the box-car, and assisted him in water-
ing the horse and also in getting into the box-car at points
along the route. The plaintiff, some eight years prior to the
trial, had suffered the loss of his right foot, and was wearing
an artificial one, although, as he testified, that fact was hardly
noticeable. At Three Forks the train was made up for the
last leg of the journey to Bozeman, and consisted of nine
freight-cars and a caboose. On the order of the conductor, the
box-car containing the horse was placed next to the engine.
The plaintiff got into the caboose and the train pulled out of
Three Forks. Soon after getting on the way, the conductor
took up the plaintiff's ticket, and informed him that he had
closed the door of the box-car because he was afraid the sparks
from the engine would set fire to the straw bedding under the
horse. According to the plaintiff's testimony, he told the con-
ductor it would be too warm in the car for the horse with the
door closed, responding to which the conductor stated: ''The
next stop, what is the matter with your going over and opening
it up and riding in there with the mare and keeping the fire
out of the car?'' The conductor's testimony upon this point
is that he asked the plaintiff if it would be too warm in the
car for the mare with the door shut, to which the plaintiff re-
plied that he did not think so; that he did not know when the
plaintiff left the caboose and entered the box-car, but that a
station or two afterward he saw him in there. The day was

sultry, and according to the plaintiff's testimony, when he reached the freight-car the mare was sweating, and her bedding was piled up under her. At Camp Creek station the fireman assisted the plaintiff in watering the mare, the plaintiff remarking to the fireman: "They have got my car next to the engine, and I have to ride in it to keep the fire out." At the station of West Gallatin the train stopped about fifteen minues to unload freight. In again getting under way, the engineer started the engine suddenly, which had the effect of making the drivers slip, and to jerk and jar the car in which the plaintiff was riding so violently that he was thrown against the jamb of the side door of the car, thence on to the floor and under the wheels where the foot of his left leg was crushed, requiring its amputation. The plaintiff characterized the jerk as exceedingly violent—the worst he ever experienced—and stated that in his opinion the cause of the sudden jerking of a train is the taking up of the slack between the cars and the way the train is handled by the engineer. The members of the train crew differed from the plaintiff as to the cause of the jerking and its effect in this particular instance, stating that the jar in the caboose was slight.

The complaint alleges that the plaintiff was a passenger upon the train, and occupied the freight-car at the instance and request of the defendant, with its full knowledge and consent "and under due authority given him by the defendant and its agents"; that while he was so occupying the car, the defendant, its agents, servants and employees who were acting in its management, negligently, carelessly and recklessly caused the train and the car the plaintiff was so occupying to be suddenly jerked, jolted, jarred and snubbed up with great and unnecessary, extraordinary, unusual force and violence, throwing the plaintiff from the car on to the ground and under the car-wheels, crushing, mangling and injuring his leg and foot at a point below the ankle, requiring amputation.

The defendant by its answer denied all the charges of negligence upon its part and alleged affirmatively that the plaintiff was a passenger in a restricted and modified sense only; that he

was upon the freight train by reason of the fact that he was
the owner of the mare then being transported and undertook to
feed and water her in transit; that notwithstanding the fact
that he had agreed to ride in the caboose attached to the train
while in motion, whether at or between stations, and not expose
himself to danger by getting on or off moving trains, he un-
necessarily and voluntarily, upon the occasion of the stopping
of the train at West Gallatin Station on defendant's road, went
forward and rode in the freight-car in which the mare was
being carried, without the knowledge of the defendant or any
of its agents, in which situation he sustained the injuries com-
plained of. In its second defense, the defendant pleads failure
on plaintiff's part to present his claim for damages within the
four months prescribed in the contract, and also the limitation
of recovery for injury to his person happening upon its trains,
cars, depot grounds or yards to the sum of $500. The truth
of the answer is denied by the replication.

At the close of all the testimony, the defendant moved for
a directed verdict, insisting that there was no evidence show-
ing gross negligence on its part or any of its agents, servants
or employees, nor any evidence in the record that the defend-
ant, its agents, servants or employees, negligently, carelessly or
recklessly caused the train or the car in which the plaintiff was
riding to be jerked, jolted or snubbed up, with great, unneces-
sary, extraordinary or unusual force or violence, causing the
injury to plaintiff; that the injury was caused by plaintiff's
own negligence and carelessness; and because the undisputed
evidence shows that the plaintiff was the owner and the per-
son in charge of the horse being transported pursuant to the
contract of shipment, and that he was injured while in charge
of the animal, and that the injury occurred more than four
months before the bringing of the action; and for the addi-
tional reason that the contract provided that the defendant
should not be liable to the owner or person in charge of the
horse for injury to his person in an amount exceeding $500,
and that plaintiff could not recover on the hypothesis that the
defendant or its agents, servants or employees were guilty of

negligence, gross or ordinary; that the undisputed evidence shows that the plaintiff was injured while riding in the car in which the horse was being shipped, in violation of the eleventh paragraph of the contract of shipment, by which he had agreed to ride in the caboose.

The only errors appellant assigns are the refusal of the district court to direct a verdict in its favor and to grant its motion for a new trial. The grounds upon which it bases its contentions are: (1) There was no evidence of negligence sufficient to sustain the verdict. (2) There was contributory negligence on the part of plaintiff which directly caused his injuries. (3) The plaintiff failed to present his claim for damages within the four-months period limited by the shipping contract. (4) Under paragraph 9 thereof, his recovery is limited to the sum of $500.

Appellant's argument is that the plaintiff had all the rights of a passenger under his ticket, so long as he remained in the caboose; that he was not a trespasser while riding in the car with his horse, but that he was there at the time of the accident for the purpose of caring for the mare, with the knowledge of the conductor; that while so traveling he occupied the position of a caretaker, being carried free for the purpose of looking after his property, and waived the protection the caboose would have afforded him had he remained there; that by riding in the car he accepted the benefit of the shipping agreement as supplemented by the consent of the conductor, and should be bound by its terms.

The first assignment of error impeaches the sufficiency of the evidence of negligence on the part of the defendant. The plaintiff upon the trial testified in support of all the essential allegations of the complaint and convinced both the trial court upon a motion for a directed verdict and the jury upon the trial that the accident was caused by the negligence of the defendant, and that the plaintiff was not guilty of contributory negligence in riding in the car with the mare. Upon the motion for a new trial, the district court again deemed the evidence sufficient in weight to warrant the verdict, and denied

the defendant a new trial. We are bound to respect the verdict of the jury and the judgment of the court in passing upon these matters, unless we conclude that the plaintiff is not entitled to recover as a matter of law. (*Previsich* v. *Butte Electric Ry. Co.*, 47 Mont. 170, 131 Pac. 25; *Monson* v. *La France Copper Co.*, 43 Mont. 65, 114 Pac. 779.)

It was not necessary for the plaintiff to prove gross negligence upon the part of the defendant. In *Neary* v. *Northern Pac. Ry. Co.*, 41 Mont. 480, 110 Pac. 226, and *Kuphal* v. *Western Montana Flouring Co.*, 43 Mont. 18, 114 Pac. 122, it was held that under an allegation of gross negligence, any lesser degree of negligence might be relied upon for recovery.

The only essential fact disputed in the court below, and which we are now called upon to review, is whether the engineer in starting the train so violently and negligently inflicted upon the plaintiff the injuries he would not otherwise have received. That issue it was the province of the jury to determine upon the conflicting evidence before it. Having reached a verdict, the matter is no longer open to inquiry here. (*Mosher* v. *Sutton's Theater Co.*, 48 Mont. 137, 137 Pac. 534; *Monson* v. *La France Copper Co.; supra.*)

As the record now stands, the only legal question for our consideration is whether the plaintiff was guilty of contributory negligence as a matter of law, in leaving the caboose and riding in the car with the horse where he was injured. If his position in the box-car was so obviously dangerous and threatening that a reasonably prudent man would have avoided it, he was guilty of contributory negligence in a legal sense, and the verdict cannot be permitted to stand.

The definition of "contributory negligence" given by the supreme court of the United States in *Baltimore etc. R. Co.* v. *Jones,* 95 U. S. 439, 24 L. Ed. 506 [see, also, Rose's U. S. Notes], was adopted by this court in *Birsch* v. *Citizens' Elec. Co.*, 36 Mont. 574, 93 Pac. 940, as follows: "Contributory negligence is a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury

as a proximate cause thereof, without which the injury would not have occurred." The correct rule, in measuring the [1] sufficiency of the evidence to carry the case to the jury, is the one approved in *Cain* v. *Gold Mountain Min. Co.*, 27 Mont. 529, 71 Pac. 1005, as follows: "No cause should ever be withdrawn from the jury unless the conclusion from the facts necessarily follows, as a matter of law, that no recovery could be had upon any view which could reasonably be drawn from· the facts which the evidence tends to establish." See, also, *Stewart* v. *Stone & Webster Eng. Co.*, 44 Mont. 160, 119 Pac. 568. Upon motion for a directed verdict, the court should not draw conclusive inferences from the proof against the plaintiff in matters which may be subject to reasonable explanation. It is only where the evidence is undisputed or susceptible of but one conclusion by reasonable men that the court is authorized to take a case away from the jury and render judgment. (*Milwaukee Land Co.* v. *Ruesink*, 50 Mont. 489, 148 Pac. 396; *Birsch* v. *Citizens' Elec. Co.*, *supra*.) Contributory negligence [2] cannot, as a general rule, resolve itself into a question of law, but must be submitted to the jury as a question of fact. So, if the issue narrows itself to a distinction between what is reasonably safe and what is not so, the question is emphatically one for the jury. (1 Shearman & Redfield on Negligence, 6th ed., sec. 54.)

If the evidence of contributory negligence is not so conclusive as to warrant setting aside a verdict, the question should be left to the jury. (2 Shearman & Redfield on Negligence, sec. 114, pp. 284, 285, and note.) The trial court, after hearing all the evidence and observing the witnesses upon the stand, was unable to say, as a matter of law, that the plaintiff committed a rash or negligent act in riding in the car with the mare, under the circumstances. The plaintiff assumed that position with the knowledge and at the suggestion of the conductor. True, the evidence is that the plaintiff was a man familiar with the business of railroading, had worked as a fireman and a brakeman for a period of nine years, was familiar with the operation of trains and the cause and effect of their

rough handling; yet he had no reason to apprehend that the engineer, knowing his position on the train, would so handle and manage the engine as to subject him to extraordinary and violent jerking and risks not contemplated by him when he entered the box-car. The testimony of all the trainmen was that they knew he was riding in the box-car with the mare next to the engine, and that there was nothing unusual in his riding there. He was not directed to stay in the caboose nor was he advised that any unusual dangers attended his riding in the freight-car. In *Mitchell* v. *Chicago etc. R. Co.*, 132 Mo. App. 143, 112 S. W. 291, the plaintiff while a passenger upon a freight train, was sitting on a box near the open door of the caboose, from which he was knocked down and injured by a violent jolt while the trainmen were making a coupling. The law there stated is applicable to this case. In affirming the judgment, the court used this language: ''In the very nature of things, there cannot be the same immunity from peril in traveling upon freight trains as there is in traveling upon passenger trains. Nevertheless, if the carrier accepts passengers on such trains, it thereby assumes toward its patrons an obligation of a high degree of care, precisely as it does when prosecuting its calling of carrying passengers on its regular passenger trains. The measure of care, however, is to be adjusted with respect to the circumstances attending the different modes of carriage and the incidental hazards assumed by passengers on freight trains. The net result with respect to the safety of the passenger may be, and no doubt is, wholly different, because of the inherent hazard incident to the operation of one train and not to the other. It is this hazard which the passenger assumes by taking passage on a freight train, the operation of which he fully knows and understands to be subject to severe jerks and many inconveniences. The carrier is responsible, however, for its negligence in the operation of a freight train precisely as it is in the operation of its passenger train, and in no instance does a passenger assume the hazard and peril arising from the negligence or want of proper care of those in charge of the freight train. (*Hedrick* v. *Missouri Pac. R. Co.*, 195 Mo. 104, [6 Ann.

Cas. 793], 93 S. W. 268; *Wait* v. *Omaha etc. R. Co.*, 165 Mo.
612, 65 S. W. 1028; *Erwin* v. *Kansas City etc. R. Co.*, 94 Mo.
App. 289, 68 S. W. 88; *Hawk* v. *Chicago etc. R. Co.*, 130 Mo.
App. 658, 108 S. W. 1119.)''

The true test in this case is: '' '(1) Whether the damage was
occasioned entirely by the negligence or improper conduct of
the defendant; or (2) whether the plaintiff himself so far con-
tributed to the misfortune by his own negligence or want of
ordinary care and caution that but for such negligence or
want of ordinary care and caution on his part the misfortune
would not have happened. In the former case the plaintiff is
entitled to recover. In the latter he is not.' '' (1 Shearman &
Redfield on Negligence, 6th ed., sec. 61, note 10, page 152; *Bal-
timore R. Co.* v. *Jones*, 95 U. S. 439, 24 L. Ed. 506 [see, also,
Rose's U. S. Notes].)

For other definitions, see Beach on Contributory Negligence,
par. 7; *Wastl* v. *Montana etc. Ry. Co.*, 24 Mont. 159, 61 Pac. 9
(1900).

The authorities are numerous to the effect that a person is
justified in assuming a position on the train to which the con-
ductor assigns him or assents to his taking, unless it is one so
obviously dangerous that no prudent man would take it. In
*Shields* v. *Minneapolis etc. R. Co.*, 124 Minn. 330, 50 L. R. A.
(n. s.) 51, 144 N. W. 1093, it is laid down that ''Where an
act is done by a passenger upon the invitation, express or im-
plied, of the trainmen, the passenger will not, as a rule, be
charged with contributory negligence as a matter of law.'' This
view accords with sound reason, and is sustained by a long line
of authorities, as will be noted by reference to the following:
10 Corpus Juris (Carriers), p. 1160, notes 91, 92; *Northern
Pac. Ry. Co.* v. *Beaton*, 64 Fed. 563, 12 C. C. A. 301; *Suttle* v.
*Southern R. Co.*, 150 N. C. 668, 64 S. E. 778; *Upham* v. *De-
troit City R. Co.*, 85 Mich. 12, 12 L. R. A. 129, 48 N. W. 199;
*Union Ry. Co.* v. *Shacklett*, 19 Ill. App. 145; *Lake Shore etc.
Ry. Co.* v. *Teeters*, 166 Ind. 335, 5 L. R. A. (n. s.) 425, 77
N. E. 599; *Dunn* v. *Grand Trunk Ry. Co.*, 58 Me. 187, 4 Am.
Rep. 267; *Lawson* v. *Chicago etc. Ry. Co.*, 64 Wis. 447, 54 Am.

Rep. 634, 24 N. W. 618; *Szezepanski* v. *Chicago etc. Ry. Co.,*
147 Wis. 180, 132 N. W. 989; *Chicago etc. Ry. Co.* v. *Burns*
(Tex. Civ. App.), 104 S. W. 1081; *Louisville etc. R. Co.* v.
*Harper,* 203 Ala. 398, 83 South. 142; *Creed* v. *Pennsylvania R.
Co.,* 86 Pa. 139, 27 Am. Rep. 693; *McGregor* v. *Great Northern
Ry. Co.,* 31 N. D. 471, Ann. Cas. 1917E, 141, 154 N. W. 261;
*Missouri etc. R. Co.* v. *Cook,* 12 Tex. Civ. App. 203, 33 S. W.
669; *Missouri etc. R. Co.* v. *Avis,* 41 Tex. Civ. App. 72, 91
S. W. 877; *Kansas City South. R. Co.* v. *Clinton,* 224 Fed. 896,
140 C. C. A. 340; *Gulf etc. R. Co.* v. *Stewart* (Tex. Civ. App.),
164 S. W. 1059; *Davis* v. *Iowa Central R. Co.,* 147 Iowa, 594,
124 N. W. 753; *Chicago etc. R. Co.* v. *Lee,* 92 Fed. 318, 34
C. C. A. 365; *Stark Electric R. Co.* v. *Brooks,* 94 Ohio St. 324,
114 N. E. 245.

The plaintiff, although riding upon a freight train, had all
[3, 4] the rights of a passenger, and was entitled to such
safeguards as might reasonably be expected on a train of that
character. (Shearman & Redfield on Negligence, 6th ed., sec.
513a.) The care to be exercised in the operation and manage-
ment of freight trains as distinguished from passenger trains
differs only in degree, having in mind the jars and jerks neces-
sary in the operation of the former; and, as is said in section
1629, volume 4, of Elliott on Railroads: "While the general
rule that the highest practical degree of care must be exercised
to protect passengers holds good, the nature of the train and
necessary difference in the mode of operation must be con-
sidered, and the company is bound to exercise only the highest
degree of care that is usually and practically exercised and con-
sistent with the operation of a train of that nature."

The plaintiff was not there as a trespasser, or wrongfully as
between him and the defendant, in view of the forbearance of
the conductor, and his being there was not such negligence in a
legal sense as would exonerate the defendant for injuring him.
(*Leasum* v. *Green Bay etc. R. Co.,* 138 Wis. 593, 120 N. W.
510; *Chicago, B. & Q. R. Co.* v. *Dickson,* 143 Ill. 368, 32 N. E.
380; *Arkansas Cent. R. Co.* v. *Janson,* 90 Ark. 494, 119 S. W.
648; *Moore* v. *Saginaw etc. Ry. Co.,* 115 Mich. 103, 72 N. W.

1112; *Dunn* v. *Grand Trunk Ry. Co.*, 58 Me. 187, 4 Am. Rep.
267; *Creed* v. *Pennsylvania Ry. Co.*, *supra; Galveston etc. Ry.
Co.* v. *Parsley*, 6 Tex. Civ. App. 150, 25 S. W. 64; *Carroll* v.
*New York & N. H. R. Co.*, 8 N. Y. Super. Ct. 571; *Blackman*
v. *Simmons*, 3 Car. & P. 138; *Hulsenkamp* v. *Citizens' Ry. Co.*,
37 Mo. 537, 90 Am. Dec. 399; *Waterman* v. *Chicago & A. R.
Co.*, 82 Wis. 634, 52 N. W. 247, 1136; *Parks* v. *Suburban Ry.
Co.*, 178 Mo. 108, 101 Am. St. Rep. 425, 77 S. W. 70; *Mitchell*
v. *Chicago etc. R. Co.*, 132 Mo. App. 143, 112 S. W. 291.)

Upon the whole case as it is presented to us in the record,
we are unable to accept the view of the learned counsel for ap-
pellant that the case should have been taken from the jury at
either stage of the trial at which motions were made.

The plaintiff insists that his right to recover is based solely
[5] upon the relation of passenger and carrier. Appellant's
contention is that—''The fact that there were two agreements—
one evidenced by the ticket and the other by the shipping con-
tract—does not preclude it from relying upon the conditions
of that agreement which comprehended the situation of the
plaintiff at the time and place of injury.'' What was the
understanding at the time the contracts were made? The un-
disputed evidence is that the plaintiff signed the shipping
agreement, returned it to the station agent, and paid the
charges demanded. The contract was then consummated on his
part. (Rev. Codes, sec. 5019.) By its terms the relation of
carrier and shipper was fixed and determined, and, as it then
stood, it contained all the stipulations and agreements relative
to the transportation of the horse alone. (Rev. Codes, sec.
5018.) The plaintiff's testimony is that he asked the station
agent if he could ride with the mare on the contract, to which
the agent replied, ''No,'' that is, ''just for the mare.'' ''He
said I couldn't ride with the mare on that contract, but that I
could if I paid cash fare; that I would have to pay cash fare
or buy a ticket.'' (*Leasum* v. *Green Bay etc. R. Co.*, *supra.*)
The contract itself lends no support to the contention of coun-
sel. The place provided for the signatures of the persons in
charge of livestock was never filled out, never signed, and

never became a part of either agreement, as will be seen by the photographic copy below:

**CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY**

Chicago, Milwaukee & St. Paul Railway Co.   Butte, Anaconda & Pacific Railway Co.   Gallatin Valley Railway Co.   Idaho Western Railway Co. Tacoma Eastern Railroad Co.   White Sulphur Springs & Yellowstone Park Railway Co.

A. M. Jepsen, Shipper.                                By A. Sayles, Agent.

.................................................................
                                        Person in Charge of Stock.

**FILL IN BLANK SPACES WITH HEAVY INK LINES.**

Chicago, Milwaukee & St. Paul R'y Co.

Chicago, Milwaukee & St. Paul Railway Co.
Butte, Anaconda & Pacific Railway Co.
Gallatin Valley R'y Co.   Idaho Western R'y Co.
Tacoma Eastern Railroad Co.
White Sulphur Springs & Yellowstone Park R'y Co.

**LIVE STOCK CONTRACT**

7/27   1916.

No of cars U. P. 78042
Conductors will pass on same train with above numbered Cars,
From Ingomar
To Bozeman
the following named man or men, who are actually in charge of Live Stock, and who have signed his or their names in ink below:
(Fill in blank spaces with heavy ink lines.)

Persons whose signatures appear above are entitled under current rules to pass in charge of Live Stock shipped under this Contract.

....................Agent.

**AGENT'S ENDORSEMENT FOR RETURN TRANSPORTATION.**

To be marked Void by Forwarding Agent if no return transportation is authorized.

Of Mr......................... from.............. to..............

Good for continuous trip commencing on
.............................. 191....
........................Agent
......,...............Station

┌─────────────────┐
│   Return Agent  │
│   Stamp Here    │
└─────────────────┘

Had the parties stood upon the livestock contract alone, and the plaintiff had paid no passenger fare and had been carried upon the train and in the car solely in accordance with its provisions, the force of counsel's argument would be more difficult to avoid. But the contrary is the fact. The station agent exacted of the plaintiff full passenger fare, and gave him to understand that he could ride in the freight-car with his mare only if he purchased a ticket or paid cash fare. Thus a separate and distinct contract was made upon which the rights and liabilities of the parties were fixed and upon which they must now be adjudicated. (*Leasum* v. *Green Bay etc. Ry. Co.,* *supra*.) In recognition of this, the plaintiff, after boarding the train, paid the cash fare demanded of him by the conductor, and was carried upon it in the car with the mare without protest and with the full knowledge of the conductor and the rest of the train crew. Having demanded of plaintiff, and received of him, full passenger fare for the entire journey, and obligated itself to use the highest degree of care to carry him safely under the conditions presented, the defendant cannot now be permitted to escape the higher obligation assumed, and substitute for it one which was obviously not in the contemplation of the parties at the time of its execution, and so escape liability for an injury the jury has declared to be the result of its negligence, and to which the plaintiff in no wise contributed.

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICE REYNOLDS: We concur in the result, for the following reasons: The defendant, having refused to recognize the right of plaintiff to ride upon the shipping contract in question, and having insisted that he could ride only by purchase of the usual passenger's ticket, cannot now stand upon the proposition that plaintiff is bound by that contract in this case. Defendant cannot insist that plaintiff shall not have the benefit of the contract for his personal transportation and at the same time be subject to its burdens in

that respect.  For these reasons plaintiff cannot be limited by the shipping contract as to the amount of damages recoverable, nor by the requirement that claim for damages be presented within a limited time.  Plaintiff, by purchase of the ticket and riding thereon, even though he left the caboose and went into the box-car, was entitled to receive the same care as any other passenger under the same circumstances.  Plaintiff's testimony disclosed a *prima facie* case of negligence in starting the train with an unusually and unnecessarily sudden and abrupt start and explanation was made showing wherein it was negligence. Inasmuch as he was a railroad man, experienced in the handling of trains, his testimony is not objectionable on the ground that it was largely opinion evidence.  When he left the caboose and went to the box-car, upon the suggestion of the conductor of the train, for the apparently legitimate purpose of taking care of his horse, we cannot say, as a matter of law, that he was guilty of contributory negligence, and think that that was a question of fact for the jury.

ASSOCIATE JUSTICES HOLLOWAY and GALEN: Under the pleadings and facts in this case, we are of opinion that the question of contributory negligence was properly submitted to the jury. Had the defense of assumption of risk been pleaded or relied upon by appellant, we think the judgment and order should have been reversed.  We concur in the result reached.